(115 So. 370)

No. 28587.

**STATE v. SEMINARY.**

Nov. 28, 1927. Rehearing Denied Jan. 18, 1928.

*(Syllabus by Editorial Staff.)*

**1. Criminal law ⬩1092(11)—Judge properly refused to sign incorrect bills of exception and did full duty by attaching statements correcting recitals.**

Trial judge properly refused to sign bills of exception containing incorrect statements of fact, and did all that he was required to do when he attached to them statements per curiam correcting their erroneous recitals.

**2. Criminal law ⬩740—Present insanity of defendant is for judge alone, subject to review by Supreme Court.**

Issue of present insanity of defendant is triable before judge alone, subject to review by Supreme Court.

**3. Criminal law ⬩625—Issue of present insanity presents question whether defendant could understand nature and object of proceeding, comprehend condition, and conduct defense in rational manner.**

Issue of present insanity of defendant presents question of whether he was sufficiently sane at time of trial and during course thereof to understand nature and object of proceeding against him, to comprehend his own *condition* in reference thereto, and to conduct his defense in a rational manner.

**4. Criminal law ⬩311—Law presumes sanity until contrary appears by preponderance of evidence.**

Law presumes that every man is sane until contrary is. proven by preponderance of evidence.

**5. Criminal law ⬩625 — Evidence held not to show present insanity of defendant, who sustained fractured skull in childhood and was queer.**

Evidence *held* not to show present insanity of defendant charged with murder, who sus-

tained depressed fracture of skull at age of 6 or 7 years when struck by street car, and was a ne'er-do-well, queer, and hasty.

**6. Criminal law ⬩519(9)—Confession made voluntarily, without promise or hope of reward, was admissible, though made orally in answer to question put by officer after arrest (Const. 1921, art. 1, § 11).**

Confession of defendant, made voluntarily, without any promise or hope of reward, *held* not inadmissible under Const. 1921, art. 1, § 11, though it was made orally in answer to question propounded by officer of law while defendant was under arrest.

**7. Criminal law ⬩1170(4)—Excluding opinion of unqualified lay witness as to sanity of defendant at time of homicide held not error, where opinion was admitted after qualification.**

Exclusion of opinion of lay witness as to sanity of defendant at time of homicide *held* not error, where witness was not then properly qualified and after further examination by counsel and court, was permitted to state opinion.

**8. Criminal law ⬩655(5)—Remarks of judge in response to statements of defendant's counsel that court's ruling was not law and that court was biased held justified.**

Remark of trial judge that he did not want defendant's counsel to say that his statement was not the law, made in response to counsel's statement to that effect, and court's further remark that he was going to stop counsel from charging that court was biased, made in response to counsel's statement to this effect, *held* not error.

**9. Criminal law ⬩1169(1)—Admitting minute entries wherein court found defendant presently sane held harmless, where not read to jury, though state's counsel stated, in making offer, that entries found defendant to be sane.**

Admitting minute entries in which court found that defendant was presently sane *held* harmless error, where entries were not read to jury, though in making offer counsel for state stated that he offered entries "in which his honor * * * found the accused * * * sane. * * *"

**10. Criminal law ⬩656(9)—Admitting minute entries wherein court found defendant presently sane held not comment on facts, where issue was insanity at time of murder.**

Admitting minute entries wherein court found that defendant was presently sane *held* not, either directly or indirectly, comment by

court upon facts, where issue was whether defendant was sane at time of murder.

**11. Criminal law ☜719(2)—Argument by defendant's counsel regarding reasons for choosing insanity as defense held improper, where reasons were not in evidence.**

Argument to jury of counsel for defendant as to why he had selected insanity as defense *held* improper, where reasons for selecting such defense were not in evidence.

**12. Criminal law ☜829(6)—Refusing instructions on presumption as to child's capacity to commit crime and on insanity held not error, where· they were covered by given instructions.**

Refusing instructions on conclusive presumption of incapacity to commit crime, of child under 7 years old, on rebuttable presumption of incapacity of person between 7 and 14 years of age, and on insanity being question for common sense of jury, *held* not error, where they were covered by general charge.

**13. Criminal law ☜783½—Instruction not to consider killing of another than victim named in indictment held properly refused, where killing was part of res gestæ bearing on malice or motive, and court instructed that victim named must have died from wound.**

Instruction not to consider killing of another person than victim named in indictment *held* properly refused, where killing was part of res gestæ bearing on malice or motive, because both persons were killed by defendant at same time and place as continuous transaction, and where judge instructed that it was essential to prove that deceased named in indictment died from effects of wound.

**14. Criminal law ☜829(18)—Instructions on reasonable doubt held properly refused, where covered by given instructions.**

Instructions that state was bound to prove guilt beyond reasonable doubt *held* properly refused, where they were covered by general charge.

**15. Criminal law ☜1059(2)—Exception to general written charge as omitting necessary points and including matters not law held to present nothing to trial court or Supreme Court, since not indicating specific errors.**

Bill of exception to general written charge on ground that it omitted necessary points of law and included matters which were not the law, *held* to present no issue to either trial court or Supreme Court, because pointing out no specific errors.

St. Paul, J., dissenting in part.

Appeal from Criminal District Court, Parish of Orleans; J. Arthur Charbonnet, Judge.

Matt Seminary, alias Joe Nelson, was convicted of murder, and he appeals and applies for mandamus. Mandamus refused, and conviction affirmed.

Richard A. Dowling and William R. Kinsella, both of New Orleans, for appellant.

Percy Saint, Atty. Gen., and Eugene Stanley, Dist. Atty., and J. Bernard Cocke, Asst. Dist. Atty., both of New Orleans, for the State.

ROGERS, J. The defendant was indicted for murder, found guilty as charged, and duly sentenced. From this conviction and sentence he has appealed.

[1] After the transcript was filed, appellant applied to this court for a writ of mandamus to compel the judge a quo to sign bills of exception Nos. 1 to 6, both inclusive, of the eleven bills reserved during the course of his trial. In his return to the rule nisi issued upon this application, the respondent judge averred that he refused to sign the bills as presented because the recitals therein contained were incorrect, as will appear from the statements per curiam signed by him and the transcript of the stenographic notes attached to each bill.

It was not only the right, but it was the duty, of the trial judge to refuse to sign bills of exception containing statements of fact at variance with his own. He did all he was required to do when he corrected the erroneous recitals of the bills in the statements per curiam, which he attached thereto. State v. Foster, 106 La. 195, 30 So. 749; State v. Cason, 28 La. Ann. 40.

The mandamus herein prayed for is therefore refused.

The defendant was indicted on October 20, 1926, for the murder which occurred on October 15, 1926. Anticipatory of a plea of present insanity and the defense that the accused was insane at the time of the commission of the crime, his attorneys, on October 22, 1926, applied to, and obtained an order for, the appointment of a commission de lunatico inquirendo to examine into his mental condition. This commission, composed of Drs. Unsworth, O'Hara, and Roeling, after subjecting the accused to various physical and mental tests, and interrogating a number of persons concerning his personal and family history, reported to the court, under date of December 16, 1926, that he was sane and responsible at the time of the commission of the crime and that he was also presently sane and responsible.

On January 3, 1927, the state ruled the defendant into court to show cause why, after due hearing, he should not be adjudged sane. The issue of present insanity was tried before the judge a quo on January 10, 1927, and resulted in a finding that the defendant was presently sane and could legally be put upon his trial. To this ruling bill of exception No. 1 was reserved.

[2] The issue of present insanity is triable and determinable before the judge alone, subject to a review by this court of his findings. State v. Cropper, 153 La. 545, 96 So. 116; State v. Brodes, 157 La. 162, 102 So. 190; State v. Burnham, 162 La. 737, 111 So. 79; State v. Genna, 163 La. 701, 112 So. 655.

[3] The question before us on this bill of exception is whether the accused was sufficiently sane at the time he was put upon his trial and during the course of the trial to understand the nature and object of the proceeding against him, to comprehend his own condition in reference thereto, and was capable of conducting his defense in a rational manner. State v. Genna, supra.

[4, 5] The testimony of all the witnesses, expert and nonexpert, heard on the issue, was reduced to writing, and is in the transcript. From our examination of it, our conclusion is that defendant does understand the nature and object of the proceeding against him and knows the situation in which he stands; that he was capable of presenting a rational defense and of consulting with and assisting his counsel in reference thereto.

The state submitted the issue of present insanity upon the testimony of the members of the lunacy commission that had been previously appointed by the court upon the application of the defendant himself. The witnesses for the defense were Drs. Leake and Devlin, of the Charity Hospital, and Salvador Seminary and Joseph Seminary, brothers of the accused, A. J. Grillot, a partner of Joseph Seminary, W. H. Gilly, Manuel Borges, and J. C. Divicenti.

At the outset of our inquiry, we are confronted with the presumption of law that every man is presumed to be sane until the contrary is proven by a preponderance of the evidence. Upon examination of the testimony in the record, we find that the three experts on mental diseases swear positively and absolutely that the accused was presently sane. No question is made of the skill and integrity of these witnesses. In a lengthy examination, direct and cross, they show the facts upon which their conclusions are based. The physical test to which they subjected the accused disclosed what is technically known as a "depressed fracture" of the parietal bone on the left side of his head above and behind the ear. Their finding in this respect was confirmed by two X-ray pictures taken at the Charity Hospital, and concerning which Drs. Leake and Devlin were placed on the witness stand and interrogated. The latter, on reading the negative of one of the pictures, stated that it showed lines of a break in the skull which were very suspicious of an old fracture. The evidence in

the possession of the experts obtained from their interviews with the friends and members of the family of the accused, as well as the testimony adduced on the trial of the issue of present insanity, showed that the fracture in question, which was about 2½ inches long, was received by the accused at· the age of 6 or 7 years, when he was struck by a street car. Dr. Unsworth explained that the term "depressed fracture" was used in referring to the injury to the defendant's head because of two ridges formed at that particular spot; the depression being between the ridges; that the so-called depression comes out from rather than goes into the skull.

The evidence shows that defendant is a prize fighter, and is known in the prize ring as an iron man because of his ability to withstand innumerable blows upon the head without any apparent harmful effect; that it was his custom when engaged in a prize fight to "poke out" his head, in order that his antagonist might strike it. Dr. O'Hara testified this fact, among others, indicated that the injury to defendant's skull did not hurt him or cause him any trouble. And the testimony of all the experts is, substantially, that defendant suffered no ill effects from the fracture; that, had he done so, they would have appeared long prior to his examination by them; that the defendant would have had some epileptic seizures or some evidence of intracranial pressure, some paralysis or other disturbances that would tend to show a pressure of the brain tissue, none of which things occurred; that when the bone of a human being heals, there is a restoration to the normal or original condition, with the exception of a scar tissue formation.

The experts also testified concerning the difference between what is known as the intelligence test, which some of them applied to defendant, and the test resorted to in order ·to establish defendant's age of responsibility.

According to this testimony, the intelligence test is synonymous with an educational test, while the other test is designed to disclose his mentality and his appreciation of responsibility for his actions. Dr. O'Hara testified that, from the point of view of intelligence (i. e. education), he rated the defendant as above a high-grade moron, which was above the age of 16 years. But all of the expert witnesses declared emphatically that the defendant's mentality and age of responsibility was that of an adult, which he was.

Against this testimony is arrayed that of the nonexpert witnesses for the defense, all of whom were among the persons interrogated by the alienists in the course of their investigation into the sanity of the accused.

Salvador Seminary testified as to defendant's age and concerning the time and manner in which he had received the injury to his head. The purport of his testimony, in other respects, is that the defendant was a ne'er-do-well, constantly calling upon his family for financial assistance, and on one occasion threatening to kill one of his brothers if he refused to give him some money. The testimony of Joseph Seminary is practically to the same effect. W. H. Gilly testified that he knew the defendant only in a casual way, and that he had never spoken to or had any relations whatever with him; that during the past two years he had observed him several times around his brother's shop near the French Market; that he thought his actions were queer; that he would come into the shop and sit down on a little keg and then jump up, appearing to be nervous and irritated; that the general opinion around the shop was that the defendant was "cuckoo." He further stated, under cross-examination, that he knew some intelligent people of whom he has heard other people say they were "cuckoo." A. J. Grillot, a partner of Joseph Seminary, stated that in the past two years he had seen the accused in his brother's place

of business; that although he had very little conversation with defendant, he feared him because of the queer way he walked into the shop and asked for his brother; that defendant was uncouth in his dress; and that he would walk in and out of his brother's shop in an excited manner and with his hair and clothes in disorder. He also stated that defendant had never threatened him nor any one else in his presence. Manuel Borges, a fish dealer in the French Market, testified that he knew the accused about 6 or 7 years, but had not seen him within the past 3 or 4 years and knew nothing of his actions during that time; that about 5 years ago he acted "hasty"; that is to say, he would "talk to you and walk off without telling you anything—that kind of stuff." He did not remember, however, any particular act done by the defendant at that time. J. C. Divicenti, a fruit peddler, testified that he had known the accused all of his (defendant's) life, but that he had not observed defendant for the past 2 years; that when defendant was a child he declared he was going to kill everybody; that defendant, when about 18 years of age, was in his employ and remained with him for a period of about 2 years; that during that time defendant was "foolish like," his penchant being for fighting, particularly with negroes, and for that reason he was glad when defendant left his employ. As hereinbefore stated, defendant subsequently became a prize fighter.

It was also shown in the evidence, which fact was also before the lunacy commission in their investigation, that a cousin of the defendant had been committed some years ago to the insane asylum, but the diagnosis of his case at the time of commitment was paresis, caused by syphilis; his insanity, therefore, being acquired and not due to heredity.

At the conclusion of this testimony, the court recalled the members of the lunacy commission, who were in court during the hearing, and asked each one, separately, whether, after having heard all of the testimony adduced by the defense, he had any reason to revise or modify his opinion. The reply of each was that he had not changed his views and was of the same opinion; that everything that had been testified to by the witnesses in court had been previously testified by them before the lunacy commission.

The testimony of the nonexpert witnesses for the defense is, in our opinion, wholly insufficient to overcome the legal presumption, reinforced, as it is, by the testimony of the medical experts, that the accused is presently sane.

[5] Bill No. 2. In this bill appellant complains of the ruling permitting the police officer who arrested him to prove that he made a confession. He objected to the admission of the confession on the grounds that it was verbal and made by him while under arrest, that it was merely an affirmative answer to a suggestive question, and that it was not voluntary, but forced, suggested, and induced in violation of the Constitution, 1921, art. 1, § 11.

We do not find any error in the ruling. The testimony attached to and made part of the bill shows that the statement of the defendant was made voluntarily and without any promise or hope of reward. This being the case, the confession was admissible, although it was made orally and in the form of an answer to a question propounded by an officer of the law while defendant was under arrest. State v. Berry, 50 La. Ann. 1309, 24 So. 329; State v. Lyons, 113 La. 959, 37 So. 890; State v. Hogan, 117 La. 863, 42 So. 352; State v. Bailey, 146 La. 624, 83 So. 854; State v. Doyle, 146 La. 973, 84 So. 315.

[7] Bill No. 3. Defendant avers, in this bill, that, on objection of the state, the court excluded the opinion of one of his lay witnesses as to his sanity at the time of, and immediately prior to, the homicide. Our examination of the testimony fails to disclose

that any such bill was reserved. The facts are that counsel for the defendant, before he had properly qualified the witness, sought his opinion as to the sanity of the accused. This was objected to by the state. The court, stating that the objection was well founded, suggested, in effect, to counsel that he would be permitted to ask the opinion of the witness after he had elicited from him the facts upon which his opinion was based. Following a colloquy between the court and counsel and some further questioning of the witness, the court took up his examination, brought out the facts about which he was able to testify, and then permitted him to state that by reason of those facts he was of the opinion that the accused was "not exactly right," whereupon the state withdrew its objection to the expression of his opinion by the witness, in all of which we fail to see wherein the defendant suffered any injury.

[8] Bill No. 4. This bill was taken to an alleged criticism by the trial judge in the presence of the jury of counsel for the defense ·during the examination of one of his nonexpert witnesses. The incident complained of arose when counsel sought to obtain from the witness an expression of his opinion concerning the sanity of the accused without first eliciting the facts upon which such an opinion could be based. The state objected, and the court expressed the opinion that the objection was good, suggesting, at the same time, the line of examination to be pursued before the question objected to could be asked, and that the form of the interrogatory be changed accordingly. The examination then proceeded. Another question of a similar character was asked and objected to. The court then called counsel's attention to his suggestion, to which counsel replied the witness had stated that the accused did everything opposite to what an ordinary person does. The court then said:

"I understand that. * * * It is very clear and plain to my mind that the law requires me

to pin the defense down to a description of the conduct of the accused taking place at certain times, at certain places, under certain conditions, with all the attendant surroundings. When you have brought that out, if you can, by that witness, you will be permitted to ask the witness what he thinks."

To which counsel replied:

"I reserve a bill to your honor's remarks in the presence of the jury. That is not the law."

The trial judge then said:

"I don't want you to say that is not the law. That is my opinion of the law. I don't want to hear anything from you in the shape of that kind of criticism. I am responsible to this jury and my conscience and to Almighty God for my interpretation of the law. I mean to stand on that. If you don't like my interpretation of the law, you are merely to take a bill, and then put a quietus on the matter. But I won't have you tell me in the presence of the jury that is not the law. That is how I am going to charge this jury at the end of this case on that score."

Counsel again expressed his intention to reserve a bill, declaring in the course of his statement that he believed "the remarks of the court are biased."

The court's rejoinder to this was:

" * * * I am going to stop you now. I am going to ask you to take your bill. I will permit you at the same time to elaborate on your bill, and let you have in that bill anything you want as a reason for making the bill. I am going to stop you charging in the presence of this jury that the court is biased."

The incident was then closed and the examination of the witness resumed. He testified to certain acts and conduct of the accused that had been observed by him, and was permitted to give as his opinion that the accused "is not exactly right," whereupon the state withdrew its objection to the testimony.

In all of this, we see no basis for defendant's complaint. The remarks of the trial judge were provoked by the declaration of his counsel in the presence of the jury that the ruling of the judge was not the law and

the court was biased. There was no comment on the facts, and the rule of evidence, as stated by the court, was substantially and manifestly correct. The trial judge was justified in objecting to the assertion of his lack of legal knowledge and in repelling the charge that he was biased in the case. The evidence sought from the witness was placed before the jury, and we cannot see how they could have received any erroneous impressions to defendant's prejudice from the remarks by the trial judge to counsel with reference to the propriety of his questions and of his statements. Cf. State v. Barnes, 48 La. Ann. 460, 19 So. 251; State v. Sandiford, 149 La. 933, 90 So. 261. The case of State v. Johns, 135 La. 552, 65 So. 738, cited by defendant, has no application to the facts presented here.

[9, 10] Bill No. 5. This bill was taken, as alleged therein, to the reading to the jury by the district attorney of the findings of the court on January 10, 1927, on the question of the present insanity of the accused.

The statement per curiam and the note of evidence in the transcript disclose, however, that the findings of the court referred to were not read to the jury. What actually occurred was that, at the close of the case, counsel for the state offered in evidence the motion and order for the appointment of the lunacy commission, the report of the commission, and the minute entries referring to the case of the defendant. In making the offer of the minute entries, counsel used the following language, viz.:

"Counsel for the state offer all of the minute entries of section E belonging to the present case, and more particularly the minute entry of January 10, 1927, in which his honor, J. Arthur Charbonnet, after hearing testimony, found the accused Matt Seminary, alias Joe Nelson, sane, and ordered that he be placed upon his trial."

Counsel for the defendant objected to the offer, on the ground that the reading of the minutes was for the purpose of prejudicing the minds of the jury and was an indirect comment on the facts of the case. The court overruled the objection, and a bill was reserved.

We do not see wherein the evidence objected to was relevant. On the other hand, we do not think the accused was prejudiced by its admission. It is true, the offer of the minute entry was made in the presence of the jury, but, as a matter of fact, its contents were not read to the jury. The offer as made was merely the method adopted by counsel for the state to describe and identify it for the purposes of the record. Nor was it, directly or indirectly, a comment by the court upon the facts—the issue involved being the question of defendant's insanity at the date of the commission of the crime. The members of the jury as reasonable men, if they paid any attention at all to the offer, knew, irrespective of the language in which it was couched, that the accused was considered by the trial judge to be presently sane; otherwise he would not have permitted him to be placed upon trial for the crime with which he was charged.

[11] Bill No. 6. This bill is submitted without argument on behalf of defendant. It was reserved to the ruling of the court sustaining an objection by the state to counsel for the defense stating to the jury in his argument why he had selected insanity as his defense. We see no error in the ruling. The reasons actuating counsel in selecting the defense in question were not in evidence, and therefore it was not proper for him to comment upon them before the jury.

[12] Bills Nos. 7, 8, 9, and 10. These bills are submitted without argument by either party to this appeal. They were reserved to the refusal of the trial judge to give the following special charges to the jury, viz.:

"1. If you, gentlemen of the jury, should find that accused has the mind of a child under 7 years of age, then, under the common law, he would be considered incapable of committing

a crime. This is what is known in law as a presumption juris et de jure, and, if that fact be established, then it would be your duty under the law to find him 'not guilty' on the plea of insanity.

"2. The common law, and that is the law under which we are governed in criminal cases, presumes that a person between the ages of 7 and 14 years is incapable of committing a crime, or rather of planning a crime, and, if a person's mind is shown to be of the age between 7 and 14 years, then that person would presumably come under the common law and be incapable of planning a crime or incapable of malice, but the presumption may be rebutted by evidence offered by the state. If after hearing all the evidence you should conclude that a preponderance of the evidence showed that this man had the mind of a child between the age of 7 and 14 years, then it would be your duty under the law to find him either 'not guilty' or 'guilty of a crime *less* than murder,' as the presumption would then be that he was incapable of having conceived malice.

"3. The question of insanity or incapacity at the time of the commission of the alleged homicide is a question for the jury to determine, and for their determination only. It is not a question of medical science; neither is it one of legal definition, although both may materially assist you. It is a question for your common and practical sense. Was he, in your opinion, on the date and at the time of the crime, a man of sound mind? If he was not, then you should find him *not guilty* on the plea of insanity.

"4. In this case mention has been made of the shooting of a girl.

"You are to disregard entirely any act which is not the act charged in the indictment.

"The only thing that this man is charged with is the killing of a man by the name of Sturdy, and any reference to any other shooting by any one at all cannot enter your discussion, nor cannot enter into your judgment in reaching a verdict in this case.

"The question to be considered in this case, aside from the question of sanity and insanity, is whether or not the state of Louisiana has proved to your satisfaction, and beyond all reasonable doubt, that the accused at the bar did willfully, feloniously, and with malice aforethought, kill a man named Ralph Sturdy.

"If the state proves this, then it has made out its case in chief. If it fails to prove this, or if you have a reasonable doubt about the guilt of the accused, in so far as Sturdy is concerned, then you must give the benefit of that doubt to the accused and acquit him."

The first three of the foregoing requested charges were refused by the trial judge because there was no evidence whatever to show that the accused had the mind of a child under 7 years of age. The testimony disclosed that he was 33 years old at the time of the commission of the crime, and the alienists who testified "made it very clear to the jury what they meant by describing the difference between the age of a person measured by intelligence tests and the age of the same person from the viewpoint of full legal and mental responsibility." All the medical experts testified that the accused was sane and responsible.

In his general charge, the trial judge instructed the jury as follows, viz.:

"Since, in reason, criminal capability depends on the understanding rather than the age, there can be no fixed rule of age which will operate justly in every possible case. But an imperfect rule is practically better than none. Therefore, at the common law, a child under 7 years is conclusively presumed incapable of crime. Between 7 and 14, the law also deems the child incapable, but only prima facie so; and evidence may be received to show a criminal capacity. The question is whether there was a guilty knowledge of wrongdoing. Over 14, infants, like all other persons, are prima facie capable; and he who would set up their incapacity must prove it." Bishop's New Criminal Law (8th Ed.) vol. 1, p. 220.

We find no error in the ruling complained of. The rights of the accused were amply protected by the instructions given in his general charge to the jury by the trial judge. The charges as requested would have served no valid purpose and would have tended only to confuse the jury.

[13, 14] The trial judge assigns as his reasons for refusing to give paragraphs 1, 2, and 3 of the special charge referred to in bill of exception No. 10 that the evidence showed the deceased and a girl were killed by the accused at the same time and place; that the act of the defendant in killing the deceased and the girl was one continuous transaction, and was

therefore a part of the res gestæ; that it would have been improper to charge the jury to disregard any act of the accused which was a part of the res gestæ, and which bore on the question of malice or motive. In his general charge, the trial judge instructed the jury that among other essentials to be proved in a trial for murder was that the deceased named in the indictment, and no other person referred to in the evidence, died from the effects of a wound.

Paragraphs 3 and 4 of the requested charge were refused on the ground that the matters referred to therein were covered by the general charge. We find this to be the case.

The special charge referred to in bill of exception No. 10 was properly refused.

[15] Bill No. 11. This bill was reserved to the general charge of the trial judge, which was in writing, on the ground that the charge failed to include certain points of law which should have been included, and included other things which are not the law of this state. Since no specific errors were pointed out in the exception to the charge, the issue was not presented in a manner to be acted upon by either the court a quo or by this court. State v. Scott, 163 La. 25, 111 So. 483.

For the reasons assigned, the conviction and sentence appealed from are affirmed.

ST. PAUL, J., dissents on bill No. 5.