SANDERS, Justice.
 

 The defendants, Milton Williams and Hazel Jones, were convicted of possessing narcotics in violation of LSA-R.S. 40:962. The court sentenced Williams to a term of 25 years and Jones to a term of 10 years, in the state penitentiary.
 
 [1]
 

 The defendants have appealed, relying upon seven bills of exception.
 

 Hazel Jones’ Bill of Exception No. 1
 

 Hazel Jones reserved Bill of Exception No. 1 to the overruling of the motion to suppress a heroin capsule and narcotic equipment seized in a search of the Milton Williams’ apartment.
 

 The facts surrounding the search are these: On June 20, 1964, Officer John
 
 *69
 
 Phillips of the Narcotic Division, New Orleans Police Department, received a telephone call from a confidential informer, who had previously given him reliable information for the arrest and conviction of narcotic offenders. The informer told Officer Phillips that the preceding day he had been to an apartment at 2543 Orleans Street occupied by a Negro man known as Red Eye and had seen Red Eye selling heroin for five dollars, a capsule.
 

 That night, Officer Phillips, Favaloro, and Spako placed the building at 2543 Orleans Street under surveillance. Watching it from an unmarked police car parked about a block away, the officers saw Milton Williams, alias Red Eye, a narcotic offender, seated on the front steps with a well-known drug addict. After a short time, another drug addict named Robert Corner arrived in an automobile. Corner and Milton Williams had a short conversation. Then the officers saw Williams go to -the rear of the building, return, and hand something to Corner.
 

 On June 22, 1964, Officer Phillips obtained a search warrant for the search of “2543 Orleans in the downstairs rear occupied by Milton Williams @ Red Eye.,” Officers Phillips and Spako, accompanied by Assistant District Attorney John Volz, began another surveillance of the building at approximately 8:30 p. m. A few minutes later they saw Robert Corner enter the alleyway leading to Williams’ rear apartment. The officers and Volz climbed a fence and approached the apartment. Through 'a fastened screen door, the officers saw defendant Hazel Jones, Robert' Corner, and one Paul Bartholomew' seated ' on a bed, watching television.' Officer Phillips-knocked on the door and announced, “We are the police; come open the door.” Hazel Jones immediately entered the kitchen for a few seconds and returned. Meanwhile, Paul Bartholomew unlatched the screen door, and the officers entered. They observed that Bartholomew appeared to be under the influence of narcotics. They served the search warrant on Bartholomew and arrested the three for possession of narcotics.
 

 The officers searched Williams’ apartment. Under the refrigerator in the kitchen, they found a capsule of heroin. Beneath a cedarrobe in the living room, they found a marijuana, cigarette.
 

 At about 10:30 p. m., Officers Phillips and Spako saw Milton Williams get out of a car and enter the alleyway leading to his apartment. They saw him reach under the hood of an old car parked in the alley, lift out a package, place it in his shirt pocket, and continue toward the apartment.
 

 Phillips and Spako informed Williams he was under arrest. They then took the package he had removed from the car. It contained narcotics paraphernalia: a rubber bulb attached to an eye dropper and two needles.
 

 
 *71
 
 Officer Spako informed Williams of what had happened during his absence and handed him the search warrant. Upon being informed that the search would continue, Williams pointed out a hiding place under a board near the door of the apartment where he said he had hidden a narcotics outfit and ten capsules of heroin. Williams retrieved a package from the hiding place. However, the officers found the hidden package contained only a narcotics outfit.
 

 Defendant Hazel Jones alleges the officers obtained the heroin capsule and other evidence as a result of an “illegal” search and seizure. Specifically, the defendant contends the apartment could not be searched in the absence of the lessee, Milton Williams, and the search warrant had to be served on the lessee prior to the search.
 

 Since the decision of the United States Supreme Court in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), demonstrative evidence obtained by means of an
 
 unconstitutional
 
 search or seizure has been inadmissible in state criminal trials. Defendants have frequently invoked the exclusionary rule in this Court. See, e. g., State v. Green, 244 La. 80, 150 So.2d 571; State v. Calascione, 243 La. 993, 149 So.2d 417; and State v. Aias, 243 La. 945, 149 So.2d 400.
 

 Our review discloses no infirmities in the search and seizure.
 

 The absence of the person named in the search warrant does not invalidate a search of the premises under the warrant. Nor is there any requirement that the warrant be served before the search. LSA-R.S. 15:47; LSA-R.S. 40:972; Pennington v. State, Okl.Cr., 302 P.2d 170; 1 Varon, Searches, Seizures and Immunities, pp. 380-381 (1961); 79 C.J.S. Searches and Seizures § 83, p. 905.
 

 Before the search in the present case, the officers served the warrant upon Paul Bartholomew, who was in the apartment. Later they served it upon Milton Williams, the apartment resident named in the warrant. Clearly, the motion to suppress is unfounded.
 

 Hazel Jones’ Bill of Exception No. 2
 

 Hazel Jones reserved this Bill to the denial of a motion for severance.
 

 The state jointly charged Hazel Jones, Robert Corner, Paul Bartholomew and Milton Williams with unlawfully possessing and having under their control a narcotic drug. Hazel Jones and Robert Corner moved for a severance, alleging their defenses were antagonistic to those of the other two defendants. Specifically, Hazel Jones alleged the apartment was that of Milton Williams; that she was merely visiting the apartment at the time of the crime; and that the narcotics belonged to and were under the control of one or more of the other defendants.
 

 
 *73
 
 LSA-R.S. 15 :316 provides that persons jointly charged shall be jointly tried unless the district attorney elects to try them separately or the court orders a severance after a contradictory hearing. Under this codal article, it is well-established that the granting of a severance rests in the sound discretion of the trial judge, whose ruling will not be disturbed on appeal unless it is manifestly erroneous and injurious to the defendant. State v. Progue, 243 La. 337, 144 So.2d 352; State v. Mack, 243 La. 369, 144 So.2d 363; State v. Faciane, 233 La. 1028, 99 So.2d 333.
 

 The motion for severance suggests that Hazel Jones was seeking to absolve herself by casting blame upon her co-defendants. But this alone is insufficient to require a severance. See State v. Goury, 184 La. 955, 168 So. 113, and the authorities therein cited.
 

 We find no error in the ruling of the trial judge.
 

 Hazel Jones’ Bill of Exception No. 3 and Milton Williams’ Bill of Exception No. 13
 

 The defendants reserved these bills when the trial judge admitted in evidence, over objection, certain items of evidence, including a white capsule, a marijuana cigarette, a folder and its contents, ten empty gelatin capsules, and a narcotic outfit wrapped in pink tissue paper. The Bills of Exception recite tersely that the evidence was inadmissible “because of the motion to suppress, no
 
 corpus delicti,
 
 no possession by defendant, and the defendant Bartholomew had already pleaded guilty to the possession of this evidence.”
 

 The motion to suppress has been discussed in disposing of Hazel Williams’ Bill of Exception No. 1. No new grounds for the motion are urged here. For the rea-’ sons previously assigned, the motion to suppress is unfounded.
 

 The police officers seized these items at the time of the search and arrests at Milton Williams’ apartment. We know of no rule that the
 
 corpus delicti,
 
 or body of the crime, had to be fully proved in this prosecution before the introduction of physical evidence. The law requires only that a foundation be laid for the admission of such evidence, consisting normally of some evidence of identification and connection, with the alleged crime or the defendant. See State v. Perkins, 249 La. 680, 190 So. 2d 95; State v. Bertrand, 247 La. 232, 170 So.2d 386; State v. Progue, 243 La. 337, 144 So.2d 352; and State v. Ricks, 242 La. 823, 138 So.2d 589. Such a foundation was laid in the present case.
 

 The defendants also rely upon Bartholomew’s plea of guilty to bar these items from evidence. Apparently, defendants suggest that, since the co-defendant pleaded guilty, he has acknowledged possession of these items and his acknowl
 
 *75
 
 edgment precludes possession or control by the other defendants. The argument is unsound. Whether or not these and other items introduced were in the possession or under the control of some or all of the defendants was a question of fact for the jury.
 

 f We conclude these Bills of Exception lack merit.
 

 Hazel Jones’ Bill of Exception No. 4
 

 Hazel Jones reserved this Bill to the overruling of her motion for a new trial.
 

 In the motion for a new trial, she re-urged the objections raised in the Bills of Exception previously discussed. Additionally, she alleged the verdict was contrary to the law and the evidence.
 

 This Bill presents nothing further for review. • •
 

 Milton Williams’ Bill of Exception No. 15 ■
 

 Milton Williams reserved this Bill to the overruling of his objection to the display before the jury of a hypodermic “outfit.” He submits that the possession of such an outfit is legal; that it was not shown to contain narcotics; that it was irrelevant; and that displaying it before the jury was highly prejudicial.
 

 The police officers obtained the hypodermic needle at Milton Williams’ apartment at the time of the search and arrests. It is immaterial whether or not the hypodermic needle contained narcotics at the time of
 
 the
 
 seizure. Guilty knowledge is an essential ingredient of the illegal possession of narcotics. State v. Richard, 245 La. 465, 158 So.2d 828; State v. Maney, 242 La. 223, 135 So.2d 473. The hypodermic needle was relevant to the issue of guilty knowledge. Having been admitted in evidence, the hypodermic needle was properly exhibited to the jury.
 

 The Bill is without merit.
 

 Milton Williams’ Bill of Exception No. 17
 

 During the trial, counsel for Williams called Paul Bartholomew to the stand. Bartholomew testified that he had been jointly charged with possession of heroin with Williams and Hazel Jones and had pleaded guilty the preceding day. Over defense objection, the district attorney was allowed to cross-examine the witness as to other facts in the case. In his Bill of Exception, defendant Williams asserts that cross-examination is limited to the subject matter of direct examination and that the trial judge’s ruling was prejudicial error.
 

 In this state, the scope of cross-examination is not limited to matters covered in direct examination. LSA-R.S. 15 : 376; State v. Angelle, 217 La. 852, 47 So. 2d 664.
 

 LSA-R.S. 15:376 provides:
 

 “When a witness has been intentionally sworn and has testified to any single
 
 *77
 
 fact in his examination in chief, he may be cross-examined upon the whole case.”
 

 The ruling of the trial judge was correct.
 

 For the reasons assigned, the convictions and sentences are affirmed.
 

 [1]
 

 . The court sentenced both as multiple offenders pursuant to the provisions of LSA-R.S. 15:529.1.