McCALEB, HAMLIN and SANDERS, JJ., are of the opinion a rehearing should be granted.

236 So.2d 804

**STATE of Louisiana**

v.

**John B. LAWSON.**

No. 50399.

June 8, 1970.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., John E. Unsworth, Jr., Asst. Dist. Atty., for plaintiff-relator.

James J. Gleason, III, New Orleans, for defendant-respondent.

HAMITER, Justice.

The defendant herein, John B. Lawson, was accused of the crime of possession of barbiturates in violation of LRS 40:1031 et

seq. He filed a motion to suppress certain evidence which the state intended to use in the prosecution of the alleged offense. Following a hearing the motion was sustained.

We granted a writ of certiorari (255 La. 343, 230 So.2d 836) on the showing by the state that: "On December 18, 1969 Officers Jones and Jackson of the New Orleans Police Department, in response to a summons over their police radio, were proceeding to the scene of an armed robbery in a police car, with their blue light on to indicate that an emergency existed. As Officers Jones and Jackson were driving along the 2000 block of Rampart Street a 1960 light green Ford car occupied by John Lawson, the accused herein, appeared in front of the police car and failed to move out of the way, in spite of the fact that the blue light was flashing on the police vehicle and the officers blew their horn several times and finally sounded their siren also. Eventually the officers managed to stop the Ford on Frenchman Street, intending to charge the driver with failing to yield to an emergency vehicle. * * *

"Officers Jones and Jackson alighted from the police car and approached the Ford in which Lawson was sitting. Officer Jones asked Lawson if he could see his driver's license. At this time Lawson stepped out of his car, and as he did so he dropped to the ground a red and white match box. Knowing that narcotic drugs are frequently hidden in match boxes, Officer Jones retrieved the match box, opened it, and saw therein red and bluish green capsules which he recognized as Tuinol, a barbituate. Lawson was immediately arrested for possession of barbituates. * * *" However, our consideration of the evidence adduced at the hearing convinces us that the facts which occurred are not exactly as stated by the state in its application.

It appears from the testimony of the accused he was driving on Touro Street (in the City of New Orleans) toward North Rampart Street at ten miles per hour. He made a left turn onto North Rampart Street, moving in a downtown direction—the only direction permitted at that point. Just as he made the turn, or shortly thereafter, he noted a marked police car behind him which commenced to flash a blue light. The operator of the following vehicle sounded his horn and he thought that they wanted to pass him so he pulled over as far as he could, but that the police vehicle did not pass. He then turned the corner and proceeded on Frenchman Street, and when he realized that the officers wanted him to stop (the siren was sounded) he did so. Thereupon, he got out of his car, as the officers approached on foot. A match box was on the seat, and one of the officers told him to hand it to him. He did so.

The testimony of the defendant and of Officer Jones, who was a passenger of the

police vehicle, establishes that North Rampart Street, where the two vehicles were traveling, is very narrow and cars were parked on both sides of the street. (Only Officer Jones testified for the state, it having been stipulated that if Officer Jackson "were to take the stand he would testify substantially the same as Officer Jones.") As stated by the district judge in his per curiam "The evidence shows that automobiles were parked on both sides of the street and that it was impossible for the defendant to pull over immediately and, therefore, he proceeded to the corner and pulled over at the intersection."

Officer Jones stated that he and the driver had been cruising in the police car and that just prior to the defendant's coming onto the street they had received over the radio a call for help at the scene of a robbery; that, after they had signalled for defendant to pull over (they intending to answer the call), they were notified by radio that no other officers were needed—all apparently within the time that they traversed the one block between Touro and Frenchman Streets. He further said that, on being informed that they were no longer needed, they decided to give a ticket to the accused for failing to yield to an emergency vehicle, and for that purpose they followed the accused's car around the corner onto Frenchman Street. They then sounded the siren to get him to stop. (There is some question as to whether they turned on the siren once or twice before the accused stopped his automobile. Of course, as the trial judge observed, it is not necessary that all vehicles stop on such siren warning, and that it is sufficient if the motorist gives room for the police car to pass even though they keep moving. We therefore deem it unimportant whether defendant immediately came to a stop or not.)

The police officer further testified that as they approached defendant's car on foot he was asked for his driver's license; that defendant got out of the car and reached as if to get his wallet, at which time the match box "dropped" to the ground and fell about three inches from his foot; and that he (the officer) "pushed the accused to the side" and retrieved the box. On looking in it, he saw what was recognized as an illegal drug; and the accused was thereupon arrested for illegal possession of narcotics and taken to the police station. No arrest was made at the scene for the alleged traffic violation, and the defendant was not given a ticket for it until he had been transported to police headquarters.

In the state's brief to this court it is asserted that: "It is the State of Louisiana's position that the police officers had probable cause to stop Lawson's car in order to issue a traffic citation to the accused for failing to yield to an emergency vehicle, and that since the initial assertion of authority by the officers was legal and val-

id, they also had the right to retrieve and examine the match box which was thrown to the ground by the accused as he got out of his car."

As we have shown, even accepting the officer's testimony as correct as to the location of the box, it was not "thrown" by the accused but merely dropped, with no showing whether it was intentional or accidental. This was conceded by the state's attorney on oral argument. But the state argues, nevertheless, that it is immaterial whether it was thrown or dropped; that in either event the falling of the match box to the ground constituted an abandonment thereof by the defendant; and that it then became public property subject to being retrieved by the police officers.

We have serious doubt as to the soundness of this position, particularly in view of the officer's own testimony that he "pushed" the defendant away in order to gain possession of the box himself. As counsel for the state conceded in oral argument, the only possible reason for such action by the police was to prevent the accused from repossessing it. We are inclined to the belief that the notion of the officer that the defendant intended to do this would negate any theory of "abandonment". However, we pretermit this issue and rest our decision on the trial court's reasons for suppressing the evidence which is that the initial stopping of defendant's vehicle was for an illegal purpose.

In the state's brief it is observed: "It is well settled that the police must have some valid reason for stopping a motorist; the right cannot be exercised at the officer's mere whim or caprice. See Carpenter v. Sigler, 419 F.2d 169 (8th Cir. 1969); Fisher, Laws of Arrest, p. 71 (1967). The State readily concedes that in order for seizure of abandoned property in a public place to be legal, the initial assertion of authority by the police must be proper and valid, and that if the initial entry or stopping is not justified, the abandoned property, which is considered as a fruit of the illegal action, is inadmissible. * * * "

In his per curiam the trial judge concluded: "In the case at bar, all the circumstances disclose that the arrest 'for failure to yield to an emergency vehicle' was made as a pretext to search for evidence and on that ground alone, the evidence should be suppressed." The clear import of this language (as well as the judge's comments during the hearing) is that the state had failed to establish that the asserted violation of a city ordinance had occurred prior to the time the officers stopped the defendant's vehicle.

To a very large extent the determination of that issue depends on the credibility of the witnesses. That this is so was clearly brought out in the colloquy between the court and counsel at the hearing. In view of the facts shown by the record, including

particularly those established by Officer Jones himself, we are constrained to affirm the conclusion of the trial judge who saw and heard the witnesses.

Under this factual conclusion it is unimportant whether the match box was dropped accidentally or "abandoned", within the purview of those cases cited by the state which hold that abandoned property may be legally seized by police officers, inasmuch as it was obtained as a result of the officers having illegally detained the defendant in the first place.

As it did in the district court, the state argues in its brief here (and cites certain legal writings in support of such argument) that it is not necessary that there be a specific traffic violation by a motorist to give the police the right to stop a vehicle, but that this can be done to "check the driver's license or to otherwise investigate him or the car"; and that when the "officers have observed vehicles being driven in an unorthodox manner, erratically or otherwise, indicating something wrong with the vehicle or its driver" the officer has the duty to stop the driver and investigate what is wrong. However, as the trial court pointed out, the officers never contended that such was the case here, they specifically relying on their story that they stopped defendant because he violated a city ordinance for failing to yield to an emergency vehicle which was not borne out by the evidence.

For the reasons assigned the writ issued by us is recalled and the ruling of the district court suppressing the evidence is affirmed.