245 So.2d 327

**STATE of Louisiana, Plaintiff-Appellee,**

**v.**

**Lionel SMITH, Defendant-Appellant.**

**No. 50541.**

Feb. 24, 1971.

Dissenting Opinion March 8, 1971.
Rehearing Denied March 29, 1971.

Rudolph F. Becker, III, New Orleans, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.

TATE, Justice.

The bill of information jointly charged the defendant Smith and his wife, Audrey, with willful and unlawful possession and control of a narcotic drug (heroin). La. R.S. 40:962 (1951). After a motion for severance was sustained, the defendant husband was tried separately.[1] Pursuant to a jury verdict of guilty, he was sentenced to ten years in the state penitentiary.

1. The wife, Audrey, pleaded guilty prior to the defendant's trial and was sentenced to six years in the penitentiary.

The skeleton facts show:

Smith's wife, Audrey, was handed some heroin. She then joined Smith at a barroom. The couple left and entered their automobile. Police officers tailed their vehicle and, when they parked, arrested the couple for possession of heroin. After they were arrested, the wife threw down the heroin. They were charged jointly with its possession.

Smith, the defendant husband, was found guilty of possession and control of heroin. The evidence shows that only the wife had physical possession of the narcotics. Nevertheless, the husband may be adjudged guilty because of his "constructive" or "joint" possession of the drug.

A person may be in constructive possession of a drug even though it is not in his physical custody, if it is subject to his dominion and control. Also, a person may be deemed to be in joint possession of a drug which is in the physical custody of a companion, if he willfully and knowingly shares with the other the right to control of it.

See: *State v. Williams*, 250 La. 64, 193 So.2d 787 (1967); *State v. Bellam*, 225 La. 445, 73 So.2d 311 (1954); *State v. Gray*, 221 La. 868, 60 So.2d 466 (1952); Annotation, Narcotic—Possession—What Constitutes, 91 A.L.R.2d 810 (1963); 25 Am.Jur.

At the defendant's trial she testified that she had possessed the heroin without her companion husband knowing it.

2d "Drugs, Narcotics, and Poisons", Section 21.

■ Since guilty knowledge is an essential ingredient of the crime of unlawful possession of an illegal drug, State v. Kreller, 255 La. 982, 233 So.2d 906 (1970), the theory of the State's charge against the defendant husband is that he knowingly permitted his wife to acquire and possess the heroin for their joint benefit and subject to his control as well as hers.

The defendant's appeal is based upon seven perfected bills of exception.[2] For convenience of discussion, we will discuss the four principal grounds of error raised by these bills, rather than each bill separately.[3]

### I. *Evidence Illegally Seized*

The first ground urged (Bill of Exception No. 1) is that the trial court erred in denying a motion to suppress certain evidence (heroin) as illegally seized. The defendant Smith was convicted of possession of such heroin.

The basis of the motion to suppress is the alleged lack of probable cause for the initial arrest or detention of Smith and his wife by the police officers, following which the incriminating heroin was seized.[4] A police officer testified that the wife, Audrey, had thrown it down immediately after she and the defendant Smith were detained by the police officers.

■ The defendant relies upon the principle that, when a suspect "abandons" property consequent to an illegal arrest, the property thrown away is considered inadmissible as the fruit of an illegal action. State v. Lawson, 256 La. 471, 236 So.2d 804 (1970). Thus, the heroin in question

2. Bills 6 and 7 of the original nine were abandoned.

3. Bill 9, taken as to the District Court's denial of a new trial, simply re-urges grounds raised by the other bills which are either rejected by us or else (Bill 6) formally abandoned by the defendant. The non-abandoned grounds of this bill will be disposed of by our discussion of the grounds raised by the other bills.

4. The only bill perfected is as to the denial of the defendant's original motion to suppress, after hearing on August 28, 1968. A supplemental motion to suppress was also filed January 28, 1969, alleging the same ground and further alleging that the defendants had not had a prior opportunity to present full evidence as to the illegal arrest. However, counsel submitted this February 10, 1969 on the face of the papers (apparently, the evidence introduced at the prior hearing), Tr. (Vol. 1) 95. The court overruled this motion to suppress, too, but no bill was perfected as to its denial. Although at oral argument counsel argued that his clients' presentation of evidence at the hearing (August 28, 1968) on the original motion to suppress had been curtailed, the actual testimony at the hearing (Tr. Vol. 1, 96–110) shows this complaint to be ill-founded. Bill of Exception No. 1 itself recites that the "hearing was held and evidence taken", without any contention that the defendant had been deprived of an opportunity to present full evidence.

may be inadmissible if there was no probable cause for the preceding arrest. Davis, Federal Searches and Seizures, Section 1.-511 (1964).

We find no merit to the bill. From the facts and circumstances within the officers' knowledge, they had probable cause to arrest at least the wife, Audrey.

Two police officers observed her obtaining several glassine envelopes, in front of premises under surveillance for narcotics transactions. A few minutes before the Audrey Smith incident, the officers had observed a transaction whereby cash was exchanged for glassine envelopes from these premises. Because heroin is commonly transported in glassine envelopes, the officers believed they were witnessing narcotics transactions.

Audrey was observed obtaining glassine envelopes from a man who had first entered the suspect premises and then emerged with them. She went into a bar, came out of it with her husband, and both drove away.

By radio contact, the observing officers alerted their teammates, who were in an unmarked police car. The latter followed the Smiths and arrested them as they parked near their home several blocks away.

The team of police officers had Mrs. Smith under almost continuous observation immediately before, during and after the reasonably-presumed narcotics transaction, and up until she was informed she was under arrest at the time the car she was in was parked. The arresting officers had probable cause to believe that at least Mrs. Smith had unlawfully obtained possession of narcotics. See La.C.Cr.P. Art. 213; State v. Johnson, 249 La. 950, 192 So.2d 135 (1966) (test of probable cause or reasonable belief).

Consequently, the arrest of Mrs. Audrey Smith was lawful. The trial court properly received in evidence the heroin she threw to the ground following it.

■ We must note, however, that, in determining the arresting officers had probable cause, we have considered evidence properly admitted at the trial for other purposes, in addition to the evidence at the hearing on the motion to suppress. We have done so under authority of State v. Andrus, 250 La. 765, 199 So.2d 867 (1967), in the absence of a showing of prejudice to the accused or of the prosecution's ill-practice through its failing to produce such evidence for the hearing on the motion to suppress.[5]

---

5. No restrictions were placed upon the *defendants'* production of testimony at the hearing on the original motion to suppress. However, the prosecution failed to produce the probable-cause evidence, in deference to a mistaken ruling made by the trial court sua sponte. Upon hearing Mrs. Audrey Smith testify that

## II. *Prejudicial Evidence Relating to Offenses of Third Persons*

■ The Smiths were arrested as a result of two police officers observing Mrs. Smith acquire glassine envelopes containing heroin. The officers were hiding in a cemetery and watching a location across the street suspected of narcotics activity.

Some five–ten minutes before Mrs. Smith came on the scene, the officers observed Lloyd Kimbrough deliver some heroin (glassine envelopes) to James Sullivan and his female companion. Three bills were taken relative to the State's use of this incident: Bill of Exception No. 2, to the district attorney describing the Kimbrough-Sullivan transaction as a preliminary to his proof; and Bills of Exception No. 3 and No. 4 to actual testimony of the Kimbrough-Sullivan transaction. The defendant made part of each bill the testimony objected to, the objection, the entire line of testimony relative to it, *and* the entire record.

The trial court held that the testimony was relevant to prove Lionel Smith's intent and guilty knowledge. It relied on La.R.S. 15:441: "Relevant evidence is that tending to show the commission of the offense and the intent * * *. Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible."

The ruling is correct. The defendant Smith is charged with constructive or joint possession of drugs actually in his wife's physical custody. She had obtained them while out of his presence. Essential to proof of the case against him was evidence that he knew his wife had acquired the heroin and also that his wife had acquired such heroin for his use and control as well as hers. (The only defense made was through the wife's testimony that she had acquired the drugs for her own use and had hidden the fact from her husband's knowledge, since he, a former addict, wished her to break the addiction, too.)

The evidence of the Kimbrough-Sullivan transaction is relevant because of the husband's incriminating (intendedly exculpatory) statement made at the time of his arrest: He told the officers that they had arrested him too soon and had no case, that he had paid Kimbrough $105.00 for drugs, but that Kimbrough had not given them to him yet. Tr. (Vol. 2) 87–88, 96, 106.

no heroin had been found on or seized from her person, the court noted that there could be no "search" or "seizure" since the heroin taken by the officers was found abandoned on the ground. See State v. Winesberry, 256 La. 523, 237 So.2d 364 (1970). The court over-

looked that property thrown to the ground may nevertheless be inadmissible as coerced by illegal police action. State v. Lawson, 256 La. 471, 236 So.2d 804 (1970). The defendant made the entire record a part of each of his bills of exception, including the present (One).

The defendant Smith is charged with constructive or joint possession of the drugs obtained by his wife from a man (Paul George) who came from an alleyway on Saratoga Street. The evidence that Kimbrough had delivered to Sullivan and his companion some drugs from the same alleyway some ten minutes earlier is relevant, in view of the defendant Smith's admission he had paid Kimbrough money for drugs. It tends to show that Smith knew and participated in his wife's obtaining possession and control of heroin from such alleyway.

### III. *Hearsay Evidence Improperly Admitted*

■ In statements given to the arresting officers, Smith had implied that he had engaged in narcotics activities to assist Narcotics Officer Varnado. To dispel this notion, the prosecutor asked the arresting officer Taylor if he had conferred with Varnado ("Yes, sir, I did"), and, then, if as a result he (Taylor) had released the defendant.

Taylor answered, "No, sir, he hadn't helped Varnado." The defense objected to this testimony as hearsay, La.R.S. 15:463, and reserved a bill (No. 5).

This bill is without merit. The trial court immediately instructed the jury to disregard this gratuitous comment by the officer, not responsive to the question. Under the circumstances, no prejudicial error was sustained. State v. Arena, 254 La. 358, 223 So.2d 832 (1969).

■ Furthermore, immediately after this testimony, Officer Varnado was called to the stand and testified, without objection, that he had never requested Smith to purchase narcotics or to set up Kimbrough for arrest. We are unable to see how Officer Taylor's comment that Smith had not helped Officer Varnado could be prejudicial, in view of the positive, unobjected-to, direct testimony from Varnado to the same effect.

### IV. *Defense Counsel's Closing Argument Improperly Curtailed*

The final contention of error occurred in this setting:

The defendant's wife, Audrey, testified that her husband had no knowledge of her acquiring the drugs in question, and that she had hidden from him that she was still addicted to the use of heroin. The prosecutor argued to the jury that, since the wife admitted she was shooting twelve papers of heroin a day into her veins, her husband should have known she was an addict.

In the defense's closing argument, counsel attempted in rebuttal to argue that it is not obvious to another that a person is an addict until he has been using the drug for

at least six months.[6] The prosecutor objected that the defense counsel was testifying as an expert to matters outside the record.

The trial court sustained the objection to this line of argument "as being outside the scope of the evidence and solely the opinion of counsel himself." The defendant perfected Bill of Exception No. 8 to this ruling of the trial court.

The defendant points out that considerable latitude is to be allowed counsel in arguments before the jury, and that it is error to·abridge the defendant's right to be heard on all the facts and circumstances which are in evidence. 5 Wharton's Criminal Law and Procedure, Section 2081 (1957). Further, if the defendant's rebuttal argument was not founded in the evidence, neither, allegedly, was there any evidence to justify the prosecution's argument, and thus justified was the retaliatory reply. State v. Borde, 209 La. 965, 25 So. 2d 736 (1946) ; Wharton, Section 2083.

Nevertheless, the trial court ruling is technically correct: There is no factual basis in the evidence for the defense counsel's argument that signs of addiction do not become observable for six months (but there is at least some factual basis, based on presumed general knowledge, for the prosecutor's argument that a husband should know of his wife's addiction if she uses twelve "fixes" a day).

◼ Broadly speaking, counsel must confine themselves in argument to the facts introduced in evidence, to matters of general or common knowledge, and to the fair and reasonable conclusions to be drawn therefrom. La.Code Crim.P. Art. 774; State v. Henry, 196 La. 217, 198 So. 910 (1940) ; State v. Seminary, 165 La. 67, 115 So. 370 (1928) ; Wharton, Section 2082; 6 Wigmore on Evidence, Section 1806 (3d ed., 1940) ; 23A C.J.S. Criminal Law § 1094; 53 Am.Jur. "Trial", Section 480.

[9] We are unable to say that the trial court erred in curtailing defendant's closing argument. There was no factual basis in the record for the assertions by counsel, which are not matters of common knowledge.

*Decree*

Accordingly, we affirm the conviction and sentence appealed from.

Affirmed.

BARHAM, J., dissents and will assign written reasons.

DIXON, J., takes no part.

---

6. The argument objected to had commenced: "Gentlemen, after a period of time it takes usually about six months for a narcotics addict to hot hit euphoria as well it, or high—". The prosecutor's objection to this line of argument was then sustained.

BARHAM, Justice (dissenting).

The majority has concluded under the evidence presented on the pretrial hearing of a motion to suppress physical evidence that the arrest was illegal (absent warrant or probable cause), and that therefore the seizure of evidence thrown down or abandoned after such an illegal arrest was not constitutional. It necessarily follows that the trial court should have then sustained the motion to suppress.

However, the majority has examined evidence admitted for other purposes at the trial before the jury to supply the requisite probable cause for arrest which was missing from the hearing on the motion. The majority relies upon State v. Andrus, 250 La. 765, 199 So.2d 867, which was decided before the applicability of Code of Criminal Procedure Article 703. State v. Andrus, supra; State v. Davidson, 248 La. 161, 177 So.2d 273, and State v. Rasheed, 248 La. 309, 178 So.2d 261, were our efforts to frame jurisprudential rules for pretrial inquiry into the constitutionality of evidence procured as a result of search and seizure, so as to comply with Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081 (1961), and the succeeding federal decisions which applied federal rules to state searches and seizures. I believe State v. Andrus is not controlling here, and that we should examine the merits of this case in the light of Code of Criminal

Procedure Article 703, A which reads:

"A. A defendant aggrieved by an unconstitutional search or seizure may move to suppress for use as evidence at the trial on the merits, any tangible objects or other property, or documents, books, papers or other writings, on the ground that they were so obtained. A motion filed under the provisions of this paragraph must be filed no later than three judicial days before the trial on the merits begins, unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion. The court in its discretion may permit the filing of such a motion to suppress at any time before or during the trial."

I am of the opinion that the review of a bill of exception reserved to an adverse ruling on the motion to suppress should be limited to the evidence adduced at that hearing. The ruling there made should be final except where newly discovered facts and circumstances warrant a hearing under a new motion. The constitutionality of a search and seizure is a question for the judge, not for the jury, and therefore any evidence offered at the trial of the case supporting or attacking the constitutionality of a search or seizure should be excluded unless admissible for other purposes. Since there is a mandatory requirement under Article 703 that the defendant raise this issue by motion to suppress, heard either in pretrial proceedings or, if

during the trial, heard out of the presence of the jury, the State is afforded good ground for objection to inquiry upon the actual trial which attempts to establish the unconstitutionality of a search and seizure. Both the State and the defendant have good objections to any testimony concerning the constitutionality of the search and seizure during trial before the jury unless such testimony is relevant and admissible for other purposes.

The federal courts have said that the defendant's failure to raise this issue by motion to suppress is a waiver of the right to raise the unconstitutionality, and that thereafter the illegality of such evidence cannot be tested by an objection to admissibility on the trial before the jury. Small v. United States, 396 F.2d 764 (C.C.A. 5 1968); United States v. Maloney, 402 F.2d 448 (C.C.A. 1 1968), cert. denied 394 U.S. 947, 89 S.Ct. 1283, 22 L.Ed.2d 481; Mesmer v. United States, 405 F.2d 316 (C.C.A. 10 1969); United States v. Bennett, 409 F.2d 888 (C.C.A. 2 1969), cert. denied 396 U.S. 852, 90 S.Ct. 113, 24 L.Ed.2d 101. State v. Rasheed and State v. Davidson laid down the state rule that a defendant could test the legality of search and seizure only under a motion to suppress, and that failure to raise the issue in this manner operated as a waiver of any claimed violation of his constitutional rights. These cases point out, as did the federal cases interpreting Federal Rule 41(e), that

the reasons for the rule are to eliminate from the trial all disputes over police conduct unrelated to the guilt or innocence of the accused, to avoid unwarranted delay of the trial and confusion of the jury, to spare the State as well as the accused the expense of a useless trial, to avoid the necessity of declaring a mistrial based upon evidence and objection before the jury which results in repetitive litigation, and to afford the State and the accused advance knowledge of the rules of evidence which must be followed during the course of the trial. Prior to our requirement for a motion to suppress, the illegal evidence was often laid before the jury before objection and ruling could be made thereon, and the prejudicial effect was such as would require a declaration of mistrial.

The majority holding here would return us to a rule of law which would obviate all the underlying reasons for the present procedural tool and eventually expunge the motion to suppress from the Code. It would open the gate for prejudicial error to be committed by the judge in the presence of the jury, it could encourage concealment and even the manufacturing of evidence, and it would force the defendant to be prepared to retry before the jury the question which he has previously presented according to law for a final determination to the judge.

If I were writing for the majority, conceivably I could try to "sunburst" the rule

I propose here, since it is obvious that here it was the trial judge's inopportune interference with the pretrial procedure by cutting off the presentation of the necessary evidence which actually caused the defect on the hearing of this motion. However, because the majority has laid down a broad rule applicable to this and all cases in the future, I can only dissent under the views I hold.

I cannot believe that a requirement that a judgment on the motion to suppress evidence should be final as to the State is harsh or inequitable to the State. The State should have relief from an adverse ruling on the motion through review by this court in a case where the evidence suppressed is the total or the bulk of the evidence required to establish the criminal conduct in that case. Moreover, the trial court would be required to carry out the express provision in Federal Rule 41(e) (our source) which our redactors omitted because they thought it implicit, therefore unnecessary—that is, to hear *all* the evidence necessary to decide the motion to suppress upon its trial. See Comment (c) under C.Cr.P. Art. 703.

I am persuaded that Code of Criminal Procedure Article 703, A intended, and I believe properly, that the evidence heard on the motion or motions to suppress out of the presence of the jury should be determinative of the issue of the constitutionality of the search and seizure. Just as the defendant should be entitled to file a new motion based upon newly discovered grounds, I think the State should upon proper showing be allowed either to reopen before trial or to apply to this court for review. I am primarily concerned that the constitutionality of the search and seizure be determined out of the presence of the jury and by the procedural device of a hearing on a motion to suppress. Since the rule is primarily designed to guard against tainting a whole proceeding with illegal and prejudicial evidence, the admissibility of which can be determined preliminarily—that issue being totally judge-oriented—, I fear that the consequences of the majority holding will be entrapment of the court to commit error, further delays, repeated litigation, unnecessary cost, and prolonged trials.

I respectfully dissent.