205 So.2d 411

**STATE of Louisiana**

v.

**Thomas J. KEMP and Thomas Nolen.**

No. 48466.

Nov. 6, 1967.

Rehearing Denied Jan. 15, 1968.

Gravel & Doggett, James Gravel, Alexandria, for appellants.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Bernard N. Marcantel, Dist. Atty., Alfred R. Ryder, Asst. Dist. Atty., for appellee.

SUMMERS, Justice.

The Grand Jury of Allen Parish returned separate indictments against Thomas J. Kemp and Thomas Nolen for aggravated assault upon Coy Turner with a shotgun in violation of Article 37 of the Louisiana Criminal Code. On the prosecutor's motion the cases were consolidated for trial. After trial on July 15, 1966 the judge found the defendants guilty. He sentenced Nolen to two years in the parish jail and to pay a fine of $300. Kemp was sentenced to seven months in the parish jail. and to pay a fine of $150. Both defendants have appealed, relying upon five bills of exceptions reserved at the trial.

The facts show that these charges arose out of a violence-marked strike by workers in the Vancouver Plywood Company at Oakdale in Allen Parish in the spring of 1966. During the late afternoon of May 6, 1966 Coy Turner and a carload of workers from the Vancouver Plywood plant were fired upon from ambush in a wooded area at the junction of the Turner Road and Louisiana Highway 112 in Allen Parish. There were two cars of workers in com-

pany, all of whom were armed. When the firing commenced all of them abandoned the vehicles and returned the fire. A heavy exchange of fire ensued momentarily between the workers and the person or persons in the woods. Then the firing from the woods ceased, and those who had been in the automobiles quickly deployed into the woods in pursuit of their assailant.

Carliss Simmons and Gerald Woodward, two of the workers, apprehended Nolen as he ran through the woods carrying a twelve-gauge shotgun and buckshot shells. Simmons and Woodward made him surrender the shotgun and walked him to their car on the highway. While they were walking back to the car with him, he declared, "I'm here. I'm caught. I only shot once. I didn't shoot to kill, I only shot for the tires," or words to that effect.

Kemp, the other defendant, was found in a car near the scene by one of the workers and held for law officers. He was in possession of a twenty-gauge shotgun and a .22 caliber pistol. His clothes, like those of Nolen, were wet, showing that he had been perspiring and walking in wet grass for it had rained earlier that afternoon. Also, it was established at the trial that the defendants Nolen and Kemp had been picketing the plant at which Coy Turner and the other occupants of the two cars were working, and they had previously threatened some of the men who crossed the picket line.

Bill of Exceptions No. 7 was reserved when both defendants objected to consolidating the two cases for trial, counsel for defendants asserting that only persons jointly charged can be jointly tried; and, since separate indictments were returned by the grand jury, no authority existed in law to consolidate the trials of these defendants. In support of this bill defendants cite Section 316 of Title 15 of the Revised Statutes, in effect at the time, which provides:

"Persons jointly indicted shall be jointly tried, unless the district attorney elect to place such persons separately upon trial, or unless the court, upon motion of defendant, shall, after a hearing contradictorily with the district attorney, order a severance."

In contending that the foregoing statute should be construed to mean that only persons jointly indicted can be jointly tried, defendants take the position that consolidating the trials of separately indicted defendants is inferentially prohibited. They argue that such a construction is supported by the subsequent enactment of Article 706 of the Louisiana Code of Criminal Procedure, which requires the consent of all defendants before consolidation can take place. That article, which became effective January 1, 1967, reads as follows:

"Upon motion of a defendant, or of all defendants if there are more than one, the court may order two or more in-

dictments consolidated for trial if the offenses and the defendants, if there are more than one, could have been joined in a single indictment. The procedure thereafter shall be the same as if the prosecution were under a single indictment."

It is argued, morever, that the comments under Article 706[1] support the contention that consolidation must be agreed upon by both defendants.

Thus the argument runs, to consolidate the trials of two separately charged defendants in 1966, when this case was tried and Section 316 of Title 15 of the Revised Statutes was in effect, was to subject defendants to trial under a system of procedure not authorized by the laws of this state, consequently a violation of a statutory right occurred entitling the defendants to a reversal.

■ The contention, that Section 316 of Title 15 of the Revised Statutes prohibits consolidation, is without merit. That section merely requires that persons jointly indicted must be jointly tried, except in certain circumstances, which are not pertinent here, when separate trials are permitted. This statute, therefore, simply ordains, as a general proposition, a condition under which it is necessary that accused parties be jointly tried. It does not purport in any manner to deny courts the authority to consolidate the trials of persons who are separately indicted.

■ Nor do we find reason to approve the contention that the subsequent enactment of Article 706 of the new Louisiana Code of Criminal Procedure, which provides that defendants must consent to consolidation, has the effect of supplying a caveat to its predecessor, Section 316, against consolidating the trials of separately charged defendants without their consent. Aside from the fact that Article 706 can be given no retroactive effect, we feel

---

1. Comments, La.Code Crim.Proc. art. 706:

(a) Fed.Rule 13 is typical of provisions which permit consolidation. It is the basis for this article, except as indicated below.

(b) This article differs from Fed.Rule 13 in that it requires consent of all defendants, if there is more than one, before the court may order consolidation. The federal rules allow consolidation by the court on its own motion or on motion of the state and over objection of a defendant. This article does not permit such action; however, the state can accomplish the same result by dismissing all charges and recharging in a consolidated form.

(c) In judicial districts where there are two or more divisions, the criminal docket is rotated among the judges and there is no problem presented by consolidation. In New Orleans, however, where there are separate criminal sections, a judge of one section can order a case allotted to him, to be consolidated with a case allotted to another section. The transfer rules of the Criminal District Court for the Parish of Orleans provide that transfer is permitted if both judges consent thereto. Since the rule is broad enough to permit transfers for consolidation, there is no necessity for a special statutory provision applicable only to the Parish of Orleans.

that the inclusion in Article 706 of an express provision that the consent of the defendants was necessary before consolidation could take place is a strong indication that such a requirement was not implicit in Section 316 of Title 15 of the Revised Statutes. For if the drafters of Section 316 had intended such a requirement they could have stipulated to that effect as was done by the drafters of Article 706.

■■■■ These crimes arose out of the same transaction, therefore, since the defenses have not been shown to be antagonistic and because we find no legislation either permitting or prohibiting consolidation, consolidation by the court is a procedural matter which was proper as an exercise of its inherent judicial powers. It was a matter within the sound discretion of the trial court, whose rulings will not be disturbed in the absence of a showing of prejudice to the substantial rights of the accused or a clear showing of abuse of that discretion. This was the common law rule in 1966 when this case was tried, which we are directed to follow in Louisiana when there is no express law on the subject. La.R.S. 15:0.2 (1950); People v. Schram, 378 Mich. 145, 142 N.W.2d 662 (1966); Commonwealth v. Smith, 186 Pa.Super. 89, 140 A.2d 347 (1958); Commonwealth v. McCord, 116

Pa.Super. 480, 176 A. 834 (1935); 23 C.J.S. Criminal Laws § 931 (1961).

■■■ Defendants say, moreover, that consolidation of these cases was improper "because both defendants made known their desire to call the other as a witness," and consolidation gave each defendant the right to refuse to testify for each was a party accused at the trial; that is to say, each defendant was deprived of his right to compulsory process[2] of the other defendant, who, as an accused, could not be compelled to take the stand.

This argument is without merit. Only one transaction is involved here because the evidence at the trial points to the fact that Nolen fired upon Coy Turner's car from ambush in a wooded area, and Kemp was waiting for him nearby in the getaway car—they acted together.

Under Fifth Amendment rights, therefore, these defendants could refuse to testify concerning the facts of the case whether they were tried jointly or separately. Each defendant was in a position to contend at separate trials that testimony concerning the transaction giving rise to the charges in which both were actors, might tend to incriminate him.

■■■ This aspect of the objection which forms part of Bill No. 7 is, like the other argument on this bill, an effort to

2. U.S.Const. amend. VI; La.Const. art. 1, § 9 (1921).

obtain a severance. But the showing that the defenses were antagonistic, which is essential to a demand for severance, has not been made. In the absence of such a showing, the matter of severance is discretionary with the trial judge. There has been no abuse of that discretion here and consolidation deprived neither defendant of compulsory process of the other any more than would have been the case in separate trials.

Bill of Exceptions No. 8 was reserved when the trial judge refused to suppress Nolen's statement or the guns and ammunition. The defendants take the position that the guns and ammunition were seized as a result of an unlawful arrest and without a search warrant. These objects were, therefore, the fruit of an official illegality. The ‾statement made by Nolen, they say, is likewise the fruit of an unlawful arrest, and the Fourth Amendment of the Federal Constitution prohibits the use of such evidence. They cite Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) to support their plea.

The position defendants have taken is based upon an erroneous premise. The arrests in question were made by private persons—not by officials. The rules established by the Federal Supreme Court upon which defendants rely to suppress the evidence do not apply to arrests made by private individuals, but, instead, they apply only to illegal arrests, searches and seizures made by officials. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1920); United States v. Goldberg, 330 F.2d 30 (3d Cir. 1964), cert. denied 377 U.S. 953, 84 S.Ct. 1630, 12 L.Ed.2d 497; State v. Evans, 249 La. 861, 192 So.2d 103 (1966).

Bill of Exceptions No. 17 was reserved by defendants when the Court permitted the introduction in evidence of the following inculpatory statement made by defendant Nolen to Simmons and Woodward while walking to the car:

"Q. Mr. Simmons, my question was, what did Mr. Nolen say to you or in your presence when you were walking from the time you saw him in the woods til you got back to the road?

"A. Well, sir, I asked him how come him to shoot at us and if he did shoot at us and he said that he did shoot at us and that he had to work just like we did and we shouldn't cross the line over there at Van Ply and, that he really didn't know how come him to shoot at us; that he knew he shouldn't of shot at us; but said he didn't shoot to kill us, he just shot at the car."

The testimony introduced to lay the foundation for the introduction of the statement shows that some ten to thirty minutes after the firing at Coy Turner's car, Simmons and Woodward came upon Nolen in the woods. All of them were armed. Simmons testified that when he hollered "halt" he thought Nolen raised his weapon to shoot at him so he immediately fired approximately fifty feet in front of Nolen to demonstrate the seriousness of his command to halt. Nolen then laid down his gun and gave himself up to Simmons and Woodward. Thereafter, as previously related, Simmons and Woodward took possession of Nolen's gun and they walked together toward the car. It was at this time, in a conversation with Simmons and Woodward, that Nolen made the inculpatory statement.

■ Defendants urge that the statement made by Nolen was involuntary because it was made while Nolen was under fear and intimidation from the guns of Simmons and Woodward. We fail to find adequate support in the record for a holding that the statement was involuntary. Simmons and Woodward testified positively that they did nothing to induce Nolen to speak. The record, in our view, simply shows that the statement was made in the course of a conversation engaged in by the parties as they walked through the woods. Indeed, Nolen, when testifying for the limited purpose of refuting the testimony that the statement had been voluntarily made, did not claim that he was under restraint of his captor's guns. On the contrary, he categorically denied making any statement to Simmons and Woodward. Under these circumstances it is manifest that the trial judge reached the correct result when he admitted the statement.

Bills of Exceptions Nos. 19 and 20 were reserved when the trial court overruled motions in arrest of judgment and motions for a new trial filed on behalf of both defendants. These motions and the argument made to support them are founded upon the premise that there was no evidence to support an essential element of the crime of aggravated assault. Thus it is asserted, there is not one scintilla of evidence that Kemp fired upon the workers in the car, or that he drove the automobile used by himself and Nolen and, furthermore, according to the evidence, the automobile did not belong to Kemp but belonged to Nolen's brother.

Article 24 of the Louisiana Criminal Code provides:

"All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet its commission, or directly or indirectly counsel or procure another to commit the crime are principals."

■ Without reviewing all of the evidence in detail, we are of the opinion that there was ample evidence to establish

the essential elements of the crime charged. The firing from ambush did take place. Kemp was found waiting for Nolen in an automobile, secreted on a side road, not too far distant from the scene of the shooting. Kemp and Nolen had ridden to the scene in that automobile. Kemp was in possession of a shotgun and a pistol. There was dampness on the legs of his trousers and perspiration on his person. This, without more, is some circumstantial evidence. And when there is *some* evidence, no matter how little, we cannot disturb the fact determination of the trial court. We do not review the facts in criminal cases, we only determine whether there is some evidence to support proof of the essential elements of the crime.

The convictions and sentences are affirmed.