288 So.2d 52 (1973)
STATE of Louisiana
v.
Charles BAKER and Wilbert Michael Dorsey.
No. 53711.
Supreme Court of Louisiana.
October 29, 1973.
*54 John C. Ciolino, Orleans Indigent Defender Program, New Orleans, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
After the grand jury of Orleans Parish indicted Charles Baker, Wilbert Dorsey and Morris Jones for murder, they were tried, found guilty as charged and sentenced to death. The crime was murder in the perpetration of armed robbery.
The following bills of exceptions are urged on this appeal in support of their motion for a new trial.

Bill No. 1
Prior to trial the defense filed motions for production of exculpatory evidence in which they sought an order of court compelling the prosecution to produce for inspection and copying "all evidence in the possession and control of the State, or others, when the evidence may be favorable to defendant and material to the issue of guilt or punishment, or could reasonably weaken or affect any evidence proposed to be introduced against defendant, including, but not limited to, statements of witnesses, exhibits and testimony which would exculpate, tend to exculpate or in any way provide mitigating factors in connection with the defendants' alleged commission of the offense charged . . . ."
The State answered that it had no evidence in its possession that would exculpate the defendants' guilt. This bill was reserved when the trial judge ruled that the State's answer was good and sufficient in law.
Defense counsel rely upon the decision in Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) to support their position. In our view this bill lacks merit. The accused was obviously embarking upon a fishing expedition. As this Court pointed out in State v. Gladden, 260 La. 735, 257 So.2d 388 (1972), the accused must not be permitted by the trial court to engage in a broad or blind fishing expedition among documents possessed by the prosecution on the chance that something favorable might turn up. Again in State v. Bailey, 261 La. 831, 261 So.2d 583 (1972), the accused sought in his motion for bill of particulars all evidence, known then or later to the State, which was exculpatory in nature or favorable to the accused. *55 We held there that this was "a fishing expedition into the files and records of the State without any specific knowledge of what evidence, if any, he wanted."
The heart of the holding in the Brady v. Maryland Case is the prosecution's suppression of evidence at the trial, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment. Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972). Thus the State's uncontradicted answer that it had no such evidence, and the absence of a showing that exculpatory evidence was in fact suppressed makes the rule of the Brady Case inapplicable here. Courts cannot find error when the prosecution fails, in answer to a request, to produce exculpatory evidence when no exculpatory evidence is in its possession or control, or, for that matter, known to the prosecution.

Bill No. 2
This bill was reserved at the overruling of another defense motion to quash. The bill presents two issues: 1) The accused were not furnished with a complete copy of the District Attorney's file nor with all written or oral inculpatory or exculpatory statements or confessions made by the accused; and 2) the death penalty provided for the crime of murder in Article 30 of our Criminal Code violates the Eighth Amendment to the United States Constitution prohibiting cruel and unusual punishment.
With few exceptions, the principle of pretrial discovery has not been approved by this Court. Other than written confessions of the accused, State v. Dorsey, 207 La. 928, 22 So.2d 273 (1945); the video taped confession of the accused, State v. Hall, 253 La. 425, 218 So.2d 320 (1969); and, in some instances, narcotics, a portion of the drug upon which the prosecution depends, State v. Migliore, 261 La. 722, 260 So.2d 682 (1972), pretrial discovery of the State's evidence has not been allowed. See State v. Hunter, 250 La. 295, 195 So.2d 273 (1967). Our disposition of the request for exculpatory and inculpatory evidence in the prosecution's possession or control in Bill No. 1 controls our consideration of the same issue in this motion to quash. It is pertinent to mention here that the State had confessions of the defendants in its possession which were furnished to defense counsel. These confessions were not used at the trial.
As to the second principal issue presented by this bill, the death penalty as administered under Article 30 of our Criminal Code, defining murder and prescribing the death penalty, has been decreed unconstitutional by the United States Supreme Court in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). This decision holds that the death penalty in such cases constitutes cruel and unusual punishment contrary to the Eighth Amendment to the United States Constitution. The prosecution concedes this proposition and, in brief, requests that this case be remanded to the trial court with instructions that these defendants be sentenced to life imprisonment in keeping with the practice observed in such cases since Furman v. Georgia. See State v. Refuge, 270 So.2d 842 (La.1972).

Bill No. 3
At a hearing on a motion to quash the indictment on the ground that the petit jury was unconstitutionally formed in that women were excluded, the trial judge denied the motion to quash. This bill was reserved.
Although we doubt seriously that these male defendants may raise this issue, this decision will rest upon the disposition of this contention in the repeated decisions of this Court and the United States Supreme Court and the constitutional and statutory enactments on the subject. Alexander v. *56 Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); Hoyt v. Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961); La.Const. Art. VII, § 41; La. Code Crim.P. art. 402; State v. Gilbert, 286 So.2d 345, No. 53390 on the docket of this Court, decided August 20, 1973, and cases cited there.
Upon this ample authority this motion to quash was properly denied.

Bill No. 4
Prior to trial and subsequent to the hearing on the State's motion to sever Morris Jones, the defendants Dorsey and Baker objected to any such severance, and the objection was overruled. This bill is abandoned by the defense. However, see La. Code Crim.Proc. Art. 704.

Bill No. 5
In an application for bill of particulars the defense requested that the prosecution furnish the age of the victim, the time, date and situs of the offense charged and a complete copy of the district attorney's file and any information in the possession of the police that could be used at the trial.
The age of the victim was readily available from the coroner's report. In its bill of particulars the State said that the offense was committed in the front of the building at 2001 St. Charles Avenue, in the city of New Orleans and that the offense occurred between 11:05 p.m. and 11:45 p. m. on March 18, 1972. The court found the answer sufficient.
When Bill No. 2 was considered we answered the defense contention that they were entitled to a copy of all matters and things in the district attorney's files. The broad, sweeping request in the motion for bill of particulars does not fall within an exception to the rule that an accused is not entitled to pretrial discovery of the evidence or files of the district attorney. See our opinion on Bill No. 2, supra. The same is true of evidence in the possession or control of the police. For the most part, these records are privileged by statute. See La.R.S. 44:3.

Bill No. 6
Ernest Jones was representing the defendant Baker and Walter Doane was representing Dorsey, they having been appointed by the court due to the indigency of the defendants. On June 1, 1972, approximately two weeks before trial, Jones was permitted to withdraw as counsel for Baker, having alleged that Baker refused to follow his advice and no longer wanted his services. At the same time the trial judge appointed Doane to also represent Baker.
Counsel filed a motion thereafter, on June 6, requesting separate trials for Baker and Dorsey. Following the court's denial of the severance, counsel filed a motion on June 8 to withdraw as counsel for Baker, alleging "there is substantial conflict for one attorney representing both defendants at the same trial." This last motion was denied and this bill was reserved.
At the hearing on the motion the trial judge asked counsel to inform him specifically of the conflict between these defendants to which he referred in his motion to withdraw in order that the court could intelligently pass upon the merits of the motion. As the trial judge observed, reference to "substantial conflict", without further explanation, was meaningless. Aside from intimating that the confessions given by these defendants indicated a conflict of interest, counsel amended his motion to withdraw by alleging that the jury may return separate verdicts and this violates the attorney-client privilege and impugns counsel's professional reputation. Otherwise counsel did not define the conflict, and the motion was dismissed.
As previously noted, the confessions were not used by the prosecution. At the trial neither Dorsey nor Baker took the witness stand, nor did they call witnesses in an attempt to establish either a defense *57 or alibi. These circumstances indicate no antagonism or conflict in their defenses or the need to appoint separate counsel.
We find no error in the ruling. The mere assertion that the defenses in a joint trial are antagonistic, or that a substantial conflict exists, is not sufficient to require the appointment of separate counsel. Some specific facts must be presented to the trial judge to show that antagonism or conflict does in fact exist. Compare State v. Bonner, 252 La. 200, 210 So.2d 319 (1968); State v. Kemp, 251 La. 592, 205 So.2d 411 (1968).

Bill No. 7
In the motion for severance filed by Dorsey he alleged he was entitled to a severance because he wished to use his codefendants' testimony which would be impossible if they were tried together, and that their defenses were antagonistic.
The Code of Criminal Procedure mandates that "jointly indicted defendants shall be tried together" unless the State elects to try them separately or the court is satisfied that justice requires a severance. La.Code Crim.P. Art. 704. And this court has squarely held that an accused is not entitled to severance simply because he alleges that he wishes to call his codefendant as a witness, which he cannot do when the codefendant is on trial with him for it was contrary to a defendant's constitutional right against self-incrimination to compel him to take the stand. In holding this contention to be without merit, we have observed that separate trials would not assure this right. Both defendants were involved in this crime which involved only one transaction. Therefore, even if severance were granted, the codefendant not being tried could not be compelled to testify. He could claim his Fifth Amendment rights. State v. Vale, 252 La. 1056, 215 So.2d 811 (1968); State v. Kemp, 251 La. 592, 205 So.2d 411 (1968); State v. Faciane, 233 La. 1028, 99 So.2d 333 (1958).
Insofar as the allegation that their defenses were antagonistic is concerned, no factual allegation supports the conclusion, and no antagonism did in fact develop at the trial. A motion grounded on these allegations is not sufficient to sever. No prejudice resulted to either defendant. See State v. Bonner, 252 La. 200, 210 So.2d 319 (1968); State v. Kemp, supra.

Bill No. 8
At this trial, which concluded on June 16, 1972, the proposition presented by Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), was alive and relevant. This bill, reserved during the voir dire examination, was based upon the decision in Witherspoon, it being contended that the selection of a jury from which those members of the community who would not inflict the death penalty are stricken for cause, deprives the defendant of his constitutional right to be tried by a jury representing a cross-section of the community.
All issues raised under the Witherspoon Case are now moot insofar as this prosecution is concerned. These defendants cannot be punished by death for this crime since the decision in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, on June 29, 1972. State v. Preece, 264 La. 156, 270 So.2d 850 (1972); State v. Refuge, 270 So.2d 842 (La.1973).

Bill No. 9
Jesse McDonald, a friend of the victim who accompanied him on the night of the fatal shooting, was being interrogated by defense counsel on cross-examination. The colloquy complained of follows:
Q. And is it not a fact that out of the ten people that were in the two lineups, only one man was asked to step forward?
A. That's correct.

*58 Q. And repeat the words: Give me that purse?
A. That's correct. And the man that was asked to step forward is that man right there, Mr. Doane, the man in the red shirt, and that's the same man that killed Harry Bell; he shot him in the side of the head. (emphasis added).
The complaint is that the judge refused to strike the italicized portion of the answer when defense counsel moved that it was not responsive, and the question could have been answered "Yes" or "No".
Several answers to this contention are found in the law. A witness cannot be held to a yes or no answer. He is entitled to explain his answer. A motion to strike is unknown to our criminal procedure. The proper vehicle would have been to request that the trial judge admonish the jury. La.Code Crim.P. Art. 771(2). Moreover, the witness' answer was relevant and material. He testified to the same effect more than once during the trial.

Bill No. 10

This bill is abandoned by the defense.

Bill No. 11
This bill was reserved when the trial judge overruled an objection to the introduction of a pair of vice grip pliers attached to the bicycle Doane was riding at the time of the shooting. Although a proper foundation was made for the introduction of the bicycle, the defense argues there was no foundation established to permit the introduction of the pliers, a separate entity to which the jury could attribute some sinister connotation. In his ruling the trial judge stated that the bicycle and pliers constituted one exhibit.
Pretermitting the question of whether the pliers and bike were in fact one exhibit, we fail to comprehend how the defendants could have been prejudiced by the presence of the pliers. Pliers, as such, are not sinister unless shown to be employed for a sinister purpose. They were, under the circumstances, innocuous. Their presence before the jury, if error, is not reversible error. La.Code Crim.P. art. 921.
For the reasons assigned, the conviction is affirmed and the sentence is set aside. The case is remanded to the trial court with instructions to impose the sentence of life imprisonment in lieu of the death penalty.
DIXON, J., concurs.
BARHAM, J., dissents with reasons.
BARHAM, Justice (dissenting).
Bills of Exceptions 6 and 7 were reserved to the trial court's denials of a motion for a severance filed on behalf of both defendants and a motion filed by Walter Doane, trial attorney for both defendants, requesting that he be allowed to withdraw as attorney for defendant Baker. Under the circumstances which existed in this case at the time the motions were filed and heard, and considering the cumulative effect of the court's denial of both these motions, I am of the belief that reversible error resulted.
Less than a month before the date on which the trial commenced, defendant Baker, then represented by Ernest Jones, withdrew a plea of not guilty previously entered and tendered a plea of guilty without capital punishment, which plea was accepted by the trial court. Six days later, the defendant Baker filed a motion to withdraw his guilty plea and the trial court granted the motion. On the same day that Baker was allowed to withdraw his guilty plea, his counsel, Ernest Jones, filed a motion to withdraw as Baker's counsel, stating as grounds therefor Baker's desire to terminate the relationship and Baker's failure and refusal to accept his advice. *59 Jones' motion to withdraw as counsel for Baker was granted and the court appointed Walter Doane, counsel for Dorsey, to represent Baker as well. Prior to this time, a motion to sever the defendants for trial had been denied by the trial court, for the reason that defendant Baker had entered a guilty plea to the crime of murder and the severance motion was thereby mooted. When Baker was allowed to re-enter his plea of not guilty, defendants' attorney, Doane, again filed a motion to sever on behalf of defendant Dorsey, alleging that Dorsey was entitled to a severance because he wished to use Baker's testimony, which would be impossible if the two were tried together. The motion further alleged that the defendants had antagonistic defenses. This motion was filed on June 6, 1972.
On June 8, 1972, Doane filed a motion to withdraw as counsel for Baker, stating as grounds therefor the court's denial of the severance motion and the existence of substantial conflict for one attorney representing both defendants at the same trial. At the hearing on Doane's motion to withdraw as Baker's counsel, the court ordered Doane to amend his motion to withdraw, commenting that a mere allegation of "substantial conflict" would not warrant granting the motion. In an amendment to his motion to withdraw, Doane proffered a theory that conflict would arise by virtue of the fact that the jury could return different verdicts for the two defendants, alleged that such would result in a violation of the attorney-client privilege, and alleged that the dual representation might well incur censure by the Bar Association's Committee on Grievances. At the hearing on the motion to withdraw as counsel, Doane, in response to the trial court's insistence that he state the nature of the "substantial conflict" alleged in the motion to withdraw, commented as follows: "Your Honor, before we go any further, I think the Court would be pressing me to divulge a prior privileged proposition." The motion to withdraw was denied after further hearing proceedings, and the motion to sever was also denied.
The majority correctly concluded, I believe, that counsel's allegation in the motion to sever that Dorsey's desire to call Baker as a witness did not necessitate granting a severance. As the majority notes, separate trials would not affect an accused's right against self-incrimination. That constitutional right could be asserted whether the trials were separate or joint. I believe, therefore, that refusal to grant the severance per se was not reversible error.
Nevertheless, I believe that the trial court's refusal to grant the motion for severance in this case, coupled as it was with the court's refusal to allow Doane to withdraw as counsel for Baker, very possibly resulted in a denial of effective assistance of counsel to both defendants, Dorsey and Baker. I am fully cognizant that the majority believes there must be a showing by a defendant that he will be prejudiced by this dual representation, and that an existing conflict of interests must be demonstrated before separate counsel will be granted. The majority partly satisfied these requirements by a retrospective finding that no antagonism in defenses in fact developed at the defendants' trial.
The general rule laid down in Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942) dealt with the failure to provide separate counsel for jointly tried defendants resulting in prejudice to a defendant and in deprivation of the constitutionally guaranteed effective assistance of counsel. However, the following language that appeared in Glasser has resulted in a welter of confusion in the many jurisdictions which have been faced with the issue of separate counsel for criminal defendants:
"* * * Irrespective of any conflict of interest the additional burden of representing another party may conceivably impair counsel's effectiveness.
"To determine the precise degree of prejudice sustained by Glasser as a result of the court's appointment * * * *60 is at once difficult and unnecessary. The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial. * * *" Glasser, supra, at pp. 75, 76, 62 S.Ct. at p. 467.
Subsequent to the Glasser decision, many courts in various jurisdictions attempted to employ standards by which to gauge ineffectiveness which resulted from dual representation of defendants. Courts have used as standards "* * * conflict of interest, prejudice, and embarassment of counsel as the indicia of ineffectiveness * * *." Note, 58 Geo.L.J. 369, at 375, 376 (1969)[*]. This excellent casenote acknowledged a problem which apparently has been considered by very few courts. The difficulty is pinpointed thusly:
"* * * Ironically, once divided loyalties and conflicts [in dual representation] arise, the more joint counsel tries to remain faithful to the goal of full and equal representation, the more he seems to reduce the probability of obtaining relief on appeal; in attempting to eliminate potentially prejudicial inconsistencies in his clients' defenses, he may produce a record barren of recognizable conflict, thereby frustrating all but the most extensive efforts of appellate speculation." 58 Geo.L.J. 369, at 382, 383. (Footnote notations omitted)
The casenote additionally points out:
"* * * Realistically, however, an attempt to reassess defense counsel's trial tactics for evidence of his motivation, embarassment, impairment, or inability to be undividedly loyal may not disclose ineffective representation." 58 Geo.L.J. 369, at 388. (Footnote notations omitted)
In this case, Doane's motion to withdraw as counsel for Baker alleged substantial conflict; he argued at the hearing on the motion that an attempt to explain the nature of the conflict would require him to violate the attorney-client privilege. The amendment to his motion to withdraw expressed his concern that the dual representation might incur censure from the Bar Association's Committee on Grievances. I am of the respectful opinion that these assertions alone were enough to require the trial court to either grant Doane's motion to withdraw as Baker's counsel or grant the motion for severance. Failure to do both, I believe, resulted in the commission of reversible error.
The ABA Standards for Criminal Justice, relating to The Defense Function, 3.5(b), provides:
"(b) Except for preliminary matters such as initial hearings or applications for bail, a lawyer * * * should not undertake to defend more than one defendant in the same criminal case if the duty to one of the defendants may conflict with the duty to another. The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations when, after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to such multiple representation." (Emphasis ours)
Our Code of Professional Responsibility EC 5-15, EC 5-16, EC 5-17 and DR 5-105 provide, in part, as follows:
"EC 5-15. If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of the representation. A lawyer should never represent in litigation multiple clients with differing interests; and *61 there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests. If a lawyer accepted such employment and the interests did become actually differing, he would have to withdraw from employment with likelihood of resulting hardship on the clients; and for this reason it is preferable that he refuse the employment initially. * * *"
"EC 5-16. In those instances in which a lawyer is justified in representing two or more clients having differing interests, it is nevertheless essential that each client be given the opportunity to evaluate his need for representation free of any potential conflict and to obtain other counsel if he so desires. Thus before a lawyer may represent multiple clients, he should explain fully to each client the implications of the common representation and should accept or continue employment only if the clients consent. If there are present other circumstances that might cause any of the multiple clients to question the undivided loyalty of the lawyer, he should also advise all of the clients of those circumstances."
"EC 5-17. Typically recurring situations involving potentially differing interests are those in which a lawyer is asked to represent codefendants in a criminal case. * * * Whether a lawyer can fairly and adequately protect the interests of multiple clients in these and similar situations depends upon an analysis of each case. In certain circumstances, there may exist little chance of the judgment of the lawyer being adversely affected by the slight possibility that the interests will become actually differing; in other circumstances, the chance of adverse effect upon his judgment is not unlikely."
"DR 5-105. Refusing to Accept or Continue Employment if the interests of Another Client May Impair the Independent Professional Judgment of the Lawyer.
(A) A lawyer shall decline proferred employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proferred employment, except to the extent permitted under DR 5-105(C).
(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5-105(C).
(C) In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each. (Emphasis supplied.)
(D) If a lawyer is required to decline employment or to withdraw from employment under DR 5-105, no partner or associate of his or his firm may accept or continue such employment."
Doane's actions indicate that he was attempting to comply with both the spirit and the letter of the applicable Code of Professional Responsibility provisions.
The majority has failed in its opinion to meet the issue of denial of effective assistance of counsel. Under the circumstances here, I believe it was error to deny both Doane's motion to withdraw as counsel for Baker and the motion for severance filed on behalf of defendant Dorsey.
I respectfully dissent from the affirmance of these defendants' convictions.
NOTES
[*] Criminal Co-defendants and the Sixth Amendment: The Case for Separate Counsel.