340 So.2d 1369 (1976)
STATE of Louisiana
v.
Raymond PERIQUE and Claudia Merritt.
No. 58349.
Supreme Court of Louisiana.
December 13, 1976.
*1371 Broderick A. Bagert, Sr., New Orleans, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Raymond Perique and Claudia Merritt were charged in the same bill of information with possession with the intent to distribute a controlled dangerous substance, to-wit: heroin, in violation of La.R.S. 40:966. After trial by jury, Raymond Perique was found guilty as charged and sentenced to life imprisonment at hard labor. Claudia Merritt was found guilty of possession of heroin and was sentenced to serve ten years at hard labor. On appeal, Perique relies on thirteen assignments of error and Merritt relies on fourteen assignments of error for reversal of their convictions and sentences.[1] Where the alleged errors are common to both appeals, we will consider them together.

ASSIGNMENT OF ERROR NO. 1 (Perique)
Defendant Perique contends that the trial judge erred in not requiring the state to furnish "concisely the time and place of the alleged offense" as requested by him in his motion for a bill of particulars. As a result, defendant argues that the scope of the prosecution was not limited, and he could not properly prepare for trial.
In a motion for a bill of particulars, defendant asked for (in addition to other requests granted) the time of day and the location of the alleged offense. The state answered that defendant possessed the heroin from 1:30 p. m. to 2:10 p. m. on April 16, 1974 (date of crime) and that the heroin was recovered from the yard of 1819 Leonidas Street in New Orleans. At the hearing on the motion for a bill of particulars, the prosecutor further supplied defendant with the details that Perique had run through the alleyway along 1821 Leonidas Street and had thrown the heroin into the yard of 1819 Leonidas Street from where it was recovered.
The purpose of a bill of particulars is to inform the defendant more specifically of the nature and cause of the charge against him. However, the defendant is not entitled to the details of the evidence with which the state expects to prove its case. State v. Knight, 323 So.2d 765 (La.1975).
Not only was defendant Perique furnished with the time and location of the *1372 offense, as requested in his motion for a bill of particulars, but the state also supplied the additional details that Perique had thrown the heroin into the yard of 1819 Leonidas Street as he ran down the alley along 1821 Leonidas. Hence, defendant's contention that the state's answers failed to apprise him of what he was expected to meet at trial is without substance. The trial judge correctly ruled that the particulars furnished by the state were good and sufficient. Assignment of Error No. 1 is without merit.

ASSIGNMENTS OF ERROR NOS. 2 AND 3 (Perique)
Defendant Perique contends that the trial judge erred in denying his pretrial motion for production of tape recordings of police radio communications between 12 noon and 7:00 p. m. on April 16, 1974 (Assignment of Error No. 2) and in denying his request for the issuance of a subpoena duces tecum ordering production of these tapes at the suppression hearing (Assignment of Error No. 3). Defendant argues that an examination of these tapes would reveal no probable cause at the time of defendant's arrest and search and a conflict between the conversation on the tapes and the trial testimony of the police officers. He further argues that the failure of the state to produce the tapes for his examination constitutes a denial of due process, citing as authority Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972).
According to the record, at the hearing on defendant's motion for production as well as at a subsequent hearing on his request for the issuance of a subpoena duces tecum for the tapes, despite the state's assertion that there was nothing of an exculpatory nature contained therein, the trial judge ordered the state to produce any part of the recorded tapes that might contain material of an exculpatory nature. At the conclusion of the second hearing, defendant's request for an in camera inspection of the tapes was taken under advisement. Subsequently, the trial judge ordered the state to produce the tapes for an in camera inspection. This was held in the court's chambers, and defense counsel was given the opportunity to hear the tapes. Thus, counsel had full opportunity to hear the content of the conversations of the police officers and to make use of this information at trial. Accordingly, defendant suffered no prejudice as a result of the trial judge's rulings denying his motion for production and his request for the issuance of a subpoena duces tecum for the tapes. Assignments of Error Nos. 2 and 3 are without merit.

ASSIGNMENTS OF ERROR NOS. 4 AND 6 (Perique)
These assignments of error relate to the denial of defendant's motions to suppress the heroin thrown over the fence into the yard of 1819 Leonidas Street by Perique as he was being chased on foot by the police officers. Perique contends that the initial chase by the police was improper; therefore, the seizure of the abandoned property was illegal and should have been suppressed.
At the suppression hearing, evidence was introduced that on April 11, 1974 information was received by the police from a confidential informant who had given reliable information in the past which led to arrests and convictions of narcotics traffickers in the city of New Orleans; that Raymond Perique, known as "Butterbowl," was staying at 8611 Belfast Street in New Orleans with Claudia Merritt; and that Perique had sent a messenger out of town to pick up a quantity of heroin. Inquiry to the utility company confirmed that Claudia Merritt resided at 8611 Belfast Street. An immediate surveillance of this residence was set up. One of the police officers participating in the surveillance testified that he had known that Perique had been previously convicted of narcotics violations. This officer recalled arresting Perique for possession of heroin in 1971, which arrest had led to his conviction. From April 11 to April 16, various phone calls were received from the informant relaying information as to the possible arrival *1373 of the heroin at this residence. The informant gave the police the information that, when the delivery would be made, Perique would be driving either a 1969 "white over green" Pontiac or an orange Firebird with given license numbers. The information also described the dress of Claudia Merritt (the possible messenger) as a gray pants suit. Taking part in the surveillance were Officers Haab, Dabdoub, Barrere and Brady. At 1:30 in the afternoon of April 16, a green Firebird pulled up to the residence. A tall black male alighted from the passenger side of the vehicle. He knocked at the door and called out to someone in the residence. He then proceeded down the alleyway alongside the house. A few minutes later, he returned to the vehicle carrying a folded newspaper in his hand and left. At 1:55, Claudia Merritt, wearing a gray pants suit, came out of the residence. She walked down Belfast to Joliet Street where she entered a "white over green" Pontiac and drove back to 8611 Belfast, got out, left the motor running and waved as if signaling to someone in the residence. She then went into the residence and Perique came out carrying a yellow and green box described as a J & B Scotch half-gallon whiskey box. He looked up and down the street, entered the Pontiac, and drove off at a high rate of speed. The officers notified another unit of the surveillance team that picked up and pulled behind the Perique vehicle near Claiborne Avenue, at which time Perique looked back and apparently recognized the unmarked car as a police vehicle. Perique then sped off traveling at times at a speed estimated to be 100 miles per hour. During this automobile chase, Perique crashed into several vehicles. The last car he struck rendered the Pontiac inoperative. Perique alighted from the vehicle with the J & B Scotch whiskey box under his arms and ran into the alleyway alongside 1821 Leonidas Street. The officers gave chase on foot. Perique fired two shots at the police officers who returned the fire. Perique was seen by the officers throwing the J & B Scotch whiskey box into the yard of 1819 Leonidas Street. As Perique attempted to jump the fence, he was caught, arrested and advised of his rights. The cardboard box was immediately retrieved by one of the officers. It contained sixty-one bundles, each bundle containing twenty-five tinfoil packets of what appeared to be heroin. A .22 caliber gun with four live cartridges and two spent casings were recovered from the immediate area in a clump of weeds.
The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by La.Code Crim.P. art. 215.1, as well as both the federal and state jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Dixon, 337 So.2d 1165 (La.1976); State v. Cook, 332 So.2d 760 (La.1976); State v. Rogers, 324 So.2d 403 (La.1975); State v. Jefferson, 284 So.2d 882 (La.1973). We have held that reasonable cause for an investigatory detention is something less than probable cause and must be deemed under the facts of each case by whether the officers had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. State v. Dixon, supra; State v. Cook, supra; State v. Weathers, 320 So.2d 892 (La.1975). The right to make an investigatory stop and question the particular individual detained must be based upon reasonable cause to believe that he has been, is, or is about to be engaged in criminal conduct. State v. Cook, supra; State v. Winesberry, 256 La. 523, 237 So.2d 364 (1970). If the officers do not have the right to make the investigatory stop, property abandoned or otherwise disposed of as a result thereof cannot be legally seized by the police officers. State v. Lawson, 256 La. 471, 236 So.2d 804 (1970).
The officers in the instant case had reliable information that Perique (and Merritt) would be making a delivery of heroin in a 1969 white and green Pontiac from 8611 Belfast Street. The informant had furnished reliable information in the past which had led to arrests and convictions. The officers knew that Perique had been previously convicted of narcotics violations *1374 and confirmed the information that Merritt resided at that address. The details of the information furnished as to the description of Merritt's dress and the vehicle involved were corroborated by the officers in their surveillance of the residence. Further observations by the police officers of the conduct of Merritt and Perique confirmed the information supplied by the informant. It is clear that, under circumstances such as these, an informant's tip can provide reasonable cause to detain and question a suspect. Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Whether or not the officers in this case may have also had probable cause to make a warrantless arrest or search at the time of their initial attempt to stop Perique's vehicle, we are satisfied that the information given by the informant carried with it enough indicia of reliability to justify the officers in making an investigatory stop. Therefore, since the initial stop would have been justified, the subsequent seizure of the abandoned heroin was legal and admissible in evidence against Perique at trial. Hence, the trial judge did not err in overruling defendant's motions to suppress the evidence. Assignments of Error Nos. 4 and 6 are without merit.

ASSIGNMENT OF ERROR NO. 5 (Perique)
Defendant contends that the trial judge erred in denying his motion for a severance. He argues that a joint trial prevented him from calling his co-defendant to testify as a witness without her consent.
La.Code Crim.P. art. 704 provides:
Jointly indicted defendants shall be tried jointly unless:
(1) The state elects to try them separately; or
(2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance.
At the hearing on the motion for severance, no evidence was adduced. The sole basis for severance in this matter is the contention that a joint trial prevented defendant from calling his co-defendant as a witness without her consent. In State v. Baker, 288 So.2d 52 (La.1973), where a similar contention was made, we stated:
. . . [T]his court has squarely held that an accused is not entitled to severance simply because he alleges that he wishes to call his codefendant as a witness, which he cannot do when the codefendant is on trial with him for it was contrary to a defendant's constitutional right against self-incrimination to compel him to take the stand. In holding this contention to be without merit, we have observed that separate trials would not assure this right. Both defendants were involved in this crime which involved only one transaction. Therefore, even if severance were granted, the codefendant not being tried could not be compelled to testify. He could claim his Fifth Amendment rights. [citations omitted]
This holding was reiterated in State v. Medlock, 297 So.2d 190 (La.1974), a case also involving a charge of possession with intent to distribute a controlled dangerous substance, wherein we stated:
. . . Nor can defendants' bare allegation that a joint trial would deprive them of the right to call the co-defendants as witnesses avail them. We have repeatedly held that such an allegation does not, of itself, warrant severance since the co-defendants can plead the Fifth Amendment privilege against self-incrimination at the separate trials. See State v. Baker, 288 So.2d 52 (La.1973) and cases cited therein.
Accordingly, in the instant case, the trial judge did not err in denying defendant's motion for a severance. Assignment of Error No. 5 is without merit.

ASSIGNMENT OF ERROR NO. 8 (Merritt)
Defendant Merritt contends that the trial judge erred in allowing the heroin to be displayed to the jury in a prejudicial manner. She argues that only the box in which the heroin was found should have been shown to the jury rather than the *1375 display of its contents (tinfoil packets of heroin attached to white sheets of paper). The basis of her argument is that the only evidence connecting her to the heroin was the fact that she was standing outside her residence when Perique walked out carrying the J & B Scotch whiskey box.
There is no merit to this contention. The jury was presented with evidence relating to the J & B Scotch whiskey box from the time Perique came out of Merritt's house carrying the box until the time it was recovered by the police from the yard of 1819 Leonidas Street where it had been thrown by Perique as he was being chased by the police. Inside the box were sixty-one bundleseach bundle containing twenty-five tinfoil packets of heroin. The arresting officer testified that he taped the tinfoil packets to white sheets of paper in order to permit him to place his initials on the evidence for identification. Further evidence tracing the custody of the heroin from the time of its recovery to its admission in evidence at trial was presented.
The evidence (heroin) was highly relevant to the prosecution of this case. It was properly identified as being related to the case. The purpose of taping the tinfoil packets to the white sheets of paper was to permit the arresting officer to place his initials on the evidence for identification. Hence, the heroin was admissible in evidence. Moreover, we find no prejudice to defendant in the manner in which it was displayed to the jury. Assignment of Error No. 8 is without merit.

ASSIGNMENT OF ERROR NO. 10 (Perique)

ASSIGNMENT OF ERROR NO. 11 (Merritt)
Defendants claim that the trial judge erred in permitting Officer Frank T. Ben, who was qualified as an expert in the field of wholesale distribution of heroin and identification of track marks, to examine their arms in the presence of the jury and to state that he could not find any such marks on either accused. Perique argues that the lack of track marks does not negate the use of heroin. Therefore, the evidence was irrelevant. Merritt argues that requiring her to show her arms to Officer Ben in the presence of the jury was highly prejudicial, comparing such exhibition before the jury to the day when prisoners were shown to the jury while still in chains.
Officer Ben's testimony was offered to establish that, in his many years of experience with narcotics users, he had never seen an addict in possession of sixty-one bundles of heroin (each bundle consisting of twenty-five tinfoil packets). The substance of his expert testimony was to point out that the amount of heroin seized, coupled with the lack of track marks on the arms of either defendant, indicated that the heroin in this matter was to be used in the wholesale distribution of the drug.
On previous occasions, this court has allowed testimony at trial that track marks were present on the arm of an accused to prove an essential ingredient of the crime charged, i.e., guilty knowledge. State v. Thomas, 329 So.2d 704 (La.1976); State v. Pierre, 302 So.2d 10 (La.1974); State v. Clouatre, 262 La. 651, 264 So.2d 595 (1972); State v. Williams, 260 La. 1167, 258 So.2d 539 (1972); State v. Smith, 257 La. 896, 244 So.2d 824 (1971). In these cited cases, the presence of track marks was considered relevant to prove guilty knowledge. Likewise, in this matter, the lack of track marks is relevant in the proof of intent to distribute the drug. Under these circumstances, we do not consider that the trial judge erred in permitting the examination of defendants' arms for track marks in the presence of the jury. These assignments of error lack merit.

ASSIGNMENT OF ERROR NO. 12 (Merritt)
Defendant Merritt contends that the trial judge erred in denying her motion for a directed verdict of acquittal after the close of the state's evidence.[2] She argues *1376 that there was no evidence of her actual or constructive possession of the heroin or that she knew that the content of the J & B Scotch whiskey box was anything other than scotch whiskey.
This court held in State v. Smith, 257 La. 1109, 245 So.2d 327 (1971) that one need not actually possess the controlled dangerous substance to violate the prohibition thereof; constructive possession is sufficient. We further stated in Smith that a person may be deemed to be in joint possession of a drug which is in the physical custody of a companion if he willfully and knowingly shares with the other the right to control it. Guilty knowledge is an essential ingredient of the crime of possession of a controlled dangerous substance. State v. Porter, 296 So.2d 302 (La.1974). Whether the accused knew the substance was a narcotic drug is a matter of proof by direct or circumstantial evidence. However, the question of sufficiency of the evidence is a matter not for this court, but for a jury. It is only where there is no evidence at all of an essential element of the crime charged that this court may legally set aside the conviction on appeal. State v. Knight, 298 So.2d 726 (La.1974).
The record discloses some evidence that Claudia Merritt had knowledge of the heroin in the J & B Scotch whiskey box and shared in the right to control it. Merritt resided in the residence located at 8611 Belfast Street. There was also evidence that Perique, a known convicted narcotics violator, also resided at the same address. On April 16, 1974 at about 1:00 in the afternoon, the police observed a green and white Pontiac located on Joliet near Belfast Street. The police has previously seen Perique operating this vehicle. At 1:55, Claudia Merritt was observed exiting 8611 Belfast Street. She walked down Belfast to Joliet Street where she entered the Pontiac and drove back to 8611 Belfast, got out, left the motor running and the door open, and waved as if signaling to someone in the residence. At this time, Perique came running out of the house carrying the J & B Scotch whiskey box in his arms. He entered the Pontiac, closed the door and drove off at a high rate of speed.
We are of the opinion that these circumstances constitute "some evidence" that Claudia Merritt knowingly and constructively possessed the heroin. Hence, the trial judge properly denied her motion for a directed verdict of acquittal. Assignment of Error No. 12 is without merit.

ASSIGNMENT OF ERROR NO. 12 (Perique)

ASSIGNMENT OF ERROR NO. 13 (Merritt)
Defendants contend that the trial judge erred in denying their motions for a new trial. Perique argues that he is entitled to a new trial based upon the errors urged in this appeal. We reject this contention for the same reasons set forth in the previous assignments of error. Defendant Merritt first urges as error the trial judge's refusal to grant her motion for a new trial grounded on the allegation that the verdict was contrary to the law and evidence. Such an allegation presents nothing for our review. State v. Jack, 332 So.2d 464 (La. 1976).
Defendant Merritt also argues that the trial judge erred in not granting a new trial on the ground of newly discovered evidence. Two arguments are advanced in support of this contention. She first claims that her co-defendant, Raymond Perique, after having been convicted, is now prepared to testify on her behalf. Secondly, she argues that the trial judge's suppression of Perique's inculpatory statement precluded admission in evidence of that portion of his statement that exculpated her. Therefore, she argues that the trial judge erred in denying her motion for severance.
There is no merit to this contention. First, no showing has been made of the facts that would be established by Perique's testimony as required by La.Code *1377 Crim.P. art. 854 or that, if his testimony had been introduced at trial, it would probably have changed the verdict of guilty. La.Code Crim.P. art. 851(3). In any event, we do not consider that, after a joint trial, an allegation in a motion for a new trial by one co-defendant that the other co-defendant will now testify on his behalf is a sufficient ground for the granting of a new trial. La.Code Crim.P. art. 851. Secondly, we find no substance in Merritt's claim that, since the suppression of Perique's inculpatory statement precluded admission in evidence of that portion of his statement that exculpated her, the trial judge erred in denying her motion for a severance. No showing has been made what portion, if any, of Perique's statement would have exculpated her. No attempt was made to offer any evidence at either the hearing on the motion for severance or on the motion for a new trial. On the contrary, Merritt's written motion for severance is grounded on the allegation that Perique's statement would inculpate her.
In sum, these assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 13 (Perique)

ASSIGNMENT OF ERROR NO. 14 (Merritt)
Defendants contend that the trial judge erred in not hearing their motions to quash the bill of information on the ground that the general venire improperly excluded women in violation of their constitutional rights. They argue that these motions to quash were never tried by the court, contrary to La.Code Crim.P. art. 537.
As far as we can ascertain from the record, defendants' motions to quash were filed on September 30, 1974 in the first trial of this matter which ended in a mistrial on October 1, 1974. Defendants argue that it was unnecessary for them to file a new motion to quash in these proceedings as they were tried under the same bill of information and before a panel of jurors selected from the same general venire.
Pretermitting the necessity of filing new motions to quash in this proceeding, we find no substance in defendants' contentions. The present matter was tried on October 7, 1974. In Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), decided on January 21, 1975, the Supreme Court held that the Louisiana provisions for the exemption of women from juries was unconstitutional. However, in Daniel v. Louisiana, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 1190 (1975), the Court held that the Taylor ruling was not to be applied retroactively, as a matter of federal law, to convictions by juries empanelled prior to the date of the Taylor decision. This court has held, consonant with Daniel, that, as a matter of state law, Taylor would not be applied retroactively. State v. Devore, 309 So.2d 325 (La.1975); State v. Rester, 309 So.2d 321 (La.1975). Hence, these assignments of error lack merit.
We notice that defendants' motions for new trial were overruled on November 6, 1974. On the same day, defendants were sentenced. The record does not reveal that defendants waived the twenty-four hour delay for imposition of sentence, after the overruling of their motions for new trial, as provided in article 873 of the Code of Criminal Procedure. Hence, the trial court erred in sentencing defendants prior to the twenty-four hour delay provided in the aforesaid article. We must therefore annul and set aside the sentences and remand for resentencing.

DECREE
For the reasons assigned, the convictions are affirmed; the sentences are annulled and set aside, and the case is remanded to the trial court for resentencing in accordance with law.
DIXON, J., concurs with reasons.
CALOGERO, J., concurs.
DENNIS, J., concurs, not fully agreeing with the treatment of assignments 4 and 6 (Perique).
*1378 DIXON, Justice (concurring).
I respectfully concur in the majority opinion, but fear that it may be subject to misunderstanding. We do not and cannot hold that Louisiana Code of Criminal Procedure article 215.1 is not circumscribed by the Fourth Amendment of the United States Constitution and Article 1, § 5 of the Louisiana Constitution. The right of the police to stop must be measured by Fourth Amendment standards. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). There it was stated:
". . . There is some suggestion in the use of such terms as `stop' and `frisk' that such police conduct is outside the purview of the Fourth Amendment because neither action rises to the level of a `search' or `seizure' within the meaning of the Constitution. We emphatically reject this notion. It is quite plain that the Fourth Amendment governs `seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime'arrests' in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has `seized' that person. And it is nothing less than sheer torture of the English language to suggest that a careful exploration of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons is not a `search.' Moreover, it is simply fantastic to urge that such a procedure performed in public by a policeman while the citizen stands helpless, perhaps facing a wall with his hands raised, is a `petty indignity.' It is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly.
The danger in the logic which proceeds upon distinctions between a `stop' and an `arrest,' or `seizure' of the person, and between a `frisk' and a `search' is twofold. It seeks to isolate from constitutional scrutiny the initial stages of the contact between the policeman and the citizen. And by suggesting a rigid all-or-nothing model of justification and regulation under the Amendment, it obscures the utility of limitations upon the scope, as well as the initiation, of police action as a means of constitutional regulation. . . .
. . . . .
Nonetheless, the notions which underlie both the warrant procedure and the requirement of probable cause remain fully relevant in this context. In order to assess the reasonableness of Officer McFadden's conduct as a general proposition, it is necessary `first to focus upon the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interests of the private citizen,' for there is `no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.' Camara v. Municipal Court, 387 U.S. 523, 534-535, 536-537, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967). And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief that the action taken was appropriate? . . ." (Citations and footnotes omitted). 392 U.S. 1, 16-22, 88 S.Ct. 1868, 1877-1880, 20 L.Ed.2d 889.
NOTES
[1] Defendant Raymond Perique has neither briefed nor argued Assignments of Error Nos. 7, 8, 9 and 11. Defendant Claudia Merritt has neither briefed nor argued Assignments of Error Nos. 1, 2, 3, 4, 5, 6, 7, 9 and 10. Therefore, we consider these assignments of error to have been abandoned. State v. Blanton, 325 So.2d 586 (La.1976) and State v. Carlisle, 315 So.2d 675 (La.1975).
[2] Act No. 527, § 1 of 1975, effective September 12, 1975, amended article 778 of the Code of Criminal Procedure to eliminate the authority of the trial judge to direct a verdict of not guilty in a jury trial. The present jury trial took place on October 7, 1974, prior to the effective date of said amendment. Hence, the amendment is inapplicable here.